## Wilson v. Smoot, Trustee, et al.

(Decided December 5, 1919.)

### Appeal from Fleming Circuit Court.

1. Trusts—Management of Trust Property.—It is the duty of a trustee having control of trust property. to so manage it in the manner in which an ordinarily prudent business person would do under the same or similar circumstances so as to realize benefits for the cestui que trust, and to keep his accounts in such manner as to enable the court to properly settle his trust affairs, and if he should fail to do so he should be charged with the value of the use of the property for the purposes to which it is devoted, less the expense of its management and a reasonable compensation for the trustee.

2. Trusts—Settlement of Trustee—Comfirming Without Exceptions. —In this case, filed to require a settlement of the trustee and his removal for mismanagement and incompetency, a report of the commissioner to whom the case was referred for settlement having been confirmed without exceptions will not be disturbed, and whether exceptions to a subsequent report covering a later period were erroneously overruled is not determined, since the record does not affirmatively show that there was no evidence heard by the commissioner or by the court on the trial of the exceptions as to the accuracy of such second report.

3. Trusts—Settlement—Costs.—The court did not err in adjudging plaintiff one of the beneficiaries in the trust to pay her cost, since she succeeded only in obtaining a settlement, with no judgment against her trustee.

4. Trusts—Trustee Under Will—Removal.—A trustee appointed under a will will not be removed from his trust except upon the clearest testimony showing his incompetence or incapacity to act as trustee, or his intentional or grossly negligent management of the trust property, and where the only derelictions with which he is charged or attempted to be proven is that he failed to make settlement in the manner and at the times required by law, and failed to manage the property·so as to realize the greatest possible profit, he will not be removed, especially when his appointment was made in the will of his wife who directed that he manage and control the property according to his judgment, and in which she expressed utmost confidence.

F. H. McCARTNEY and O. R. BRIGHT for appellant.

B. S. GRANNIS and JOHN P. McCARTNEY for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

In December, 1912, Elvira Smoot, who was the wife of the appellee and defendant below, John J. Smoot, and the mother of the appellant and plaintiff below, Amanda S. Wilson, departed this life domiciled in Flemng county, leaving a last will and testament. She was the owner of a small farm in Fleming county bordering on the Licking river and containing about 75 acres; a small lot upon which was located a residence in the town of Sherburne, and personal property appraised at $600.00, together with some household and kitchen furniture. She also owned a one-half undivided interest in a vacant lot in the town of South Sherburne, it being located just across the Licking river in Bath county. In her will she provided for the payment of her debts and funeral expenses, and devised to her husband, the defendant, John J. Smoot, her household and kitchen furniture; to her daughter Amanda S. Wilson (the plaintiff below), her one-half interest in the vacant lot in South Sherburne, and in a residuary clause she devised the remainder of her property to her husband in trust for the use and benefit of her three children, Anna Smoot, Amanda S. Wilson and Henry L. Smoot, providing that the property should remain in trust during the life of her husband and that at his death it should be equally divided among the three children, or the issue of those who might be dead at that time; but if no surviving issue, then the property to go to the survivor or survivors. The clause of the will appointing the husband trustee says:

"I appoint my husband, John J. Smoot, as trustee in trust for said children of the property so devised them herein and empower him to control, use and manage same for their benefit according to his judgment, and it is my will that the said John J. Smoot be not required to execute any bond as trustee aforesaid, having full con- fidence in his judgment and discretion in managing said property for the benefit of my said children."

The plaintiff, Mrs. Wilson, was a widow at the time of her mother's death and lived on a 160-acre farm adjoining the one owned by the testatrix. She had one child about thirteen years of age for whom she was appointed guardian, and her occupancy, management and control of the lands of her deceased husband was by virtue of her dower interest therein and of the remaining portion through her guardianship of her son.

Upon the death of testatrix, and after her will was probated, there seems to have been at least a tacit understanding among all of the interested parties that the defendant as trustee under the will of his deceased wife with his daughter, Anna Smoot, who was then about thirty-five years of age and unmarried, and who had always lived with her parents, should continue to occupy the 75 acres under the management and control of the trustee for their use and benefit, as well as for the benefit of the other two children. Matters continued to move along as they had done before the death of the mother, with all members of the family working harmoniously together for their mutual comfort. As a part of this understanding the maiden sister was to receive as compensation for her labors as cook and housekeeper for her father, $50.00 per year over and above her maintenance, and by common consent the son, Jeff Smoot, cultivated a portion of the farm as a tenant upon the usual and customary terms 'that prevailed in that vicinity. During all this time Mrs. Wilson enjoyed the privilege of the family household to an unlimited extent, and as freely as she had done during the life time of her mother. She and her father embarked on some small business ventures in the way of grazing cattle for the market, and the trust farm was free and open to her for pasturing, feeding and other care of her stock, all of which privileges she, without objection from any source, frequently availed herself. She admits in her deposition that she was at her father's house almost daily, and that more frequently than otherwise she would take her noonday meal with her father and her sister. Things continued after this fashion until about the middle of April, 1915, when Anna Smoot accused plaintiff's son of taking from the former three dollars, which seems to have been admittd as true by plaintiff, since she returned the amount to her sister. However, this incident estranged the sisters and plaintiff soon thereafter became uncompromisingly angry with her father and brother also neither of whom, according to this record, has ever given her the slightest pretext for her conduct. She followed this up by applying to the county court for a rule requiring her father as trustee under her mother's will to make settlement of his accounts as such trustee, and later emphasized that determination by filing this suit asking for

such accounting and charging that her father was incapable and incompetent to serve as trustee, and asked that he be removed and another appointed in his place.

All the relief that plaintiff sought by her petition was resisted, not only by the answer of the trustee, but also by the answers of her brother and sister whom she also made defendants in her suit. The court, under an agreed order dated June 9, 1917, referred the cause to the master commissioner to take proof and report the condition of the accounts of the trustee. In the discharge of that duty the commissioner took the depositions of plaintiff, her father and her brother. The depositions covered the transactions of the trustee as well as the condition of his account up to August first of that year. The report of the commissioner was filed January 21, 1918, and it was ordered to and did lay over for exceptions until May 21 thereafter, when, no exceptions having been filed, it was confirmed. On the day of confirmation the court ordered the commissioner to make settlement with the trustee for matters occurring in the discharge of his trust after August 1, 1917, to the date of confirmation. That settlement was made and a report by the commissioner was filed, to which the plaintiff filed exceptions to certain items of credit taken by the trustee, which items were pointed out in the exceptions, and the court upon submission overruled the exceptions and confirmed the report. He declined to remove the trustee, or to give plaintiff judgment for any sum, since she had received benefits almost equal to the balance found to be due her after deducting her costs which were adjudged against her. To reverse these rulings of the court, plaintiff prosecutes this appeal.

It is at once apparent that we are without authority to review any of the items allowed, either of debit or credit contained in the first report of the master commissioner, since there were no exceptions to any of them, and plaintiff thereby waived all errors, if any, in allowing them. It is likewise doubtful if we have authority to reverse any of the items in the second report, since the record is silent as to what evidence, if any, was heard either by the commissioner before making it, or by the court upon the trial of plaintiff's exceptions thereto. Under such circumstances we might well presume that, unless the record affirmatively shows that no evidence

was heard, the court did hear evidence and found it sufficient to sustain his judgment. Whether this be the correct practice or not, we are quite convinced of our inability to determine from the exceptions alone for what purpose the items excepted to were expended, since there is nothing containd in neither the report of the commissioner nor the exceptions to show what that purpose was, and we do not feel that it is incumbent upon us to presume that they were not made in furtherance of the general purposes of the trust.

There are items in the first report of a similar nature to those excepted to the second report, and the evidence heard by the commissioner before filing his first report shows the purpose of such expenditure. But we do not conceive it to be our duty to presume that similar items in the second report were incurred in like manner, and in the absence of some basis upon which we could accurately determine the state of defendant's account as contained in the commissioner's second report, we are not inclined to disturb the judgment of the trial court in confirming it. Graves' Committee v. Lyons, 166 Ky. 446.

It is insisted by the attorney for the trustee that the will of testatrix conferred upon him a joint beneficial interest in the trust property with his children, and in substantiation of this we are referred to the case of Feagan v. Metcalfe, 150 Ky. 745. In that case it was inferentially held that the husband as trustee under his wife's will for the latter's children took a joint beneficial interest with the children in the trust property which was inseparable from their interest. But in that case the clause of the will creating the interest of the trustee provided that he "shall take, hold and *enjoy* all the real and personal estate of the decedent whatsoever that such decedent may be possessed of at the time of the death of such decedent in trust for the use and benefit of our children and heirs at law then living." While the similar clause of the will now under consideration does not expressly provide for any *enjoyment* of the trust property by the trustee, but only that he shall "control, use and manage same" for their (children's) benefit according to his judgment. The word "enjoyment" contained in the will involved in the Feagan case is absent from the will involved in the case before us. If we treat the pres-

ent will as one creating an active trust in the trustee, without joint beneficial interest in the trust property, he would then be held to account only for the management of the property in the mode pointed out by the settler in the instrument creating the trust, as an ordinarily prudent business man would be required to do under the same or similar circumstances.

It will be observed that the will of the testatrix does not require her husband and appointed trustee to so manage and control the property as to realize the greatest financial profit therefrom, but only that it shall be done by him "for the benefit of the children." This may be accomplished by managing the property in a good, husband-like manner, so as to increase its productiveness, and so as to preserve, improve and keep it in a way that will be beneficial to the *cestui ques trust* when they shall come into possession of it at the death of their father. There is nothing in the testimony found in the record to show that he is not managing the estate in this manner. On the contrary, it rather shows that he is managing it so as to attain that result.

Very decided objection is made to that part of the judgment requiring the plaintiff to pay her part of the cost, amounting to $53.25, since it is claimed that she succeeded at least to the extent of requiring her father to make an accounting, but an accounting is only for the purpose of ultimate relief of obtaining a judgment, and if the accounting does not result in a judgment in plaintiff's favor for some amount, we fail to see wherein plaintiff's personal gratification obtained by her would be sufficient to carry the cost in her favor. The matter of cost in an equity case is largely in the discretion of the court, and in view of the fact that defendant had failed to make any report, and that plaintiff failed, by the suit, to obtain any other relief than the report, we think the court did not abuse his discrteion in the adjustment he made of the payment of cost.

It is insisted that the evidence contains enough to show the incompetence of the trustee, and that the court erred in declining to remove him. The general rule containing the grounds upon which courts of equity may remove trustee is thus stated in 39 Cyc. 261-2:

"What constitutes a sufficient reason for removing a trustee is a matter peculiarly within the discretion of

the court, which should be guided by considerations of the welfare of the beneficiaries and of the trust estate. But the power of removal, especially of trustees appointed by will, ought to be exercised sparingly. There must be a clear necessity for interference to save trust property. It is not every mistake or neglect of duty which will induce a court to remove a trustee. There must be such gross negligence or misconduct as to evidence a want either of capacity or fidelity, putting the trust in jeopardy. Mere failure in the discharge of duties on account of mistake or misunderstanding is not ground for removal, unless such failure shows a want of the proper capacity to execute the duties. Still less will the court interfere because of an injudicious exercise of discretion, or refusal to exercise a discretionary power for the advantage of the estate. And even acts of imprudence or neglect are usually treated as reasons for making the trustee give recompense for the wrong or error rather than as ground for superseding him in his office.''

In the instant case the trustee was appointed by the will of his deceased wife. She had been living with him since 1871, and must be presumed to have been thoroughly familiar with his ability to manage such property, as well as familiar with his methods of doing so. With this knowledge she appointed him trustee for her children during his life, saying that she had ''full confidence in his judgment and discretion in managing said property for the benefit of my said children.'' Under these circumstances, and in the light of the text above quoted, before the court would remove the defendant as trustee under the will of his wife something more should appear than a failure to make reports and settlements as required by law, and more than a mere neglect to realize all that possibly could be realiezd from the trust property. When a trustee fails to keep his accounts in an intelligent manner, the penalty is to charge him with the value of the use of the trust property for the purpose to which it is devoted, and to credit that sum with legitimate expenses and a reasonable compensation for the trustee, but there is no testimony in the case to show the result of such a method of settlement were we to find the trustee derelict in his duties so as to require the application of that rule. We therefore conclude that

under the condition of the record there is no alternative left to us but to affirm the judgment, which is accordingly done.