ESTATE OF DREIER : DREIER, Appellant, vs. DURST, Trustee, Respondent.

*February 13—March 10; 1931.*

*Sam Levitin* of Madison, for the appellant.

For the respondent there was a brief by *Dunwiddie & Thurber* of Monroe, and oral argument by *J. D. Dunwiddie*.

FRITZ, J. On July 10, 1915, J. H. Durst was duly appointed and qualified as testamentary trustee under the will of John Dreier. A promissory note for $8,450, secured by a mortgage, executed by John Yuan on April 24, 1915, and due on April 24, 1920, constituted the principal asset of the trust estate which came into the trustee's possession. On the accounting in the county court the issues finally narrowed down to the trustee's responsibility for the loss sustained by his acceptance of that note and mortgage as a trust investment, and his failure to enforce payment of that obligation when it became due in 1920. As we have concluded that that failure renders the trustee liable for the loss, there is no occasion for further consideration at this time of facts in relation to the acquisition and acceptance of that asset as a trust investment in the first instance, or the resulting legal consequences.

It is sufficient to note the following undisputed facts: In administering the estate of John Dreier, Durst, as executor of the will and as the referee appointed in proceedings for the sale of real estate under sec. 296.26, Stats., participated in the sale to John Yuan, for $18,750, of a farm which was owned by the estate, subject to a mortgage for $10,300, and the fair and reasonable value of which Durst reported, under oath, to be $18,750. For the difference be-

tween the purchase price of $18,750 and the existing mortgage of $10,300, Yuan executed the note of April 24, 1915, for $8,450, payable in five years to Durst as trustee, with interest at five and one-half per cent. per annum, and secured by another mortgage on the farm, executed by Yuan. Durst collected the interest which accrued up to the maturity of that note, but no part of the principal was paid when it became due on April 24, 1920. Instead of enforcing payment, Durst accepted a new note, dated April 28, 1920, executed by Yuan for $8,450, with interest at six per cent. per annum, due April 28, 1925, and secured by mortgage on the farm, also executed by Yuan. The prior mortgage, securing $10,300, was then still a lien on the farm, and no part of that debt had been paid. The new note and mortgage were accepted by Durst without any authorization by the county court, or the beneficiaries of the trust, to grant an extension of the time of payment, or to then accept a mortgage which in point of priority and the security afforded thereby did not comply with the requirements of sec. 2100b (now sec. 231.32), Stats. 1919.

Durst testified on the trial, and the county court found, that that new mortgage was obtained to correct a mistake in the former mortgage, in so far as it erroneously described a note secured by Yuan and four others, instead of by Yuan only. The trial court also found that in 1920 the market value of that farm was sufficient to secure the then existing mortgage liens aggregating $23,050.

In his report as trustee, filed November 22, 1918, Durst had reported that the value of the farm was $22,100. Manifestly, if those amounts, based on Durst's proof, are the correct values for the years 1918 and 1920, then Durst could have enforced payment of the $8,450 when Yuan's first note became due on April 24, 1920. After that date he collected only the interest due in 1921 and 1922, and in lieu of interest he collected some rent from the farm for the years

1924 and 1925. In 1926, on a foreclosure of the prior mortgage for $10,300, the farm was sold and only $163.67 were realized by Durst, as trustee, to apply on the note of April 28, 1920, for $8,450. Consequently, there was a loss on that asset of $8,286.33 on account of principal, and a loss of the interest thereon since 1922, with the exception of the payments received as rent in 1924 and 1925. The trial court found that that loss was due to depreciation in the value of the farm at the time of the foreclosure sale, and not to neglect, mismanagement, or fault of the trustee; and concluded that he was not personally liable.

It is true that there was no defalcation or fraud on the part of the trustee. He has accounted for all of the trust property with the exception of the $8,450 asset, and he has disclosed the manner in which most of that asset was lost without advantage or profit to himself. However, the evidence establishes that when the first note became due in April, 1920, the value of the farm was such that payment of all or at least a very substantial part of that note could have been enforced. On the other hand, during the five-year term of that first note, nothing had been paid in reduction of the principal of either that note or the $10,300 debt secured by the prior mortgage. When Durst accepted that new note, secured by only a second mortgage—whether he did so for the purpose of correcting the original mortgage (which could have been done without extending the time of payment for another period of five years), or whether he did so primarily for the purpose of extending that time,— he acted without even the semblance of authority from the court, the *cestuis que trust,* or by virtue of the provisions of the will or the statutes of this state. At that time, in so far as the security afforded by real-estate mortgages on Wisconsin real estate was concerned, the statute authorized the investment of trust funds only in "obligations secured . . . by first real-estate mortgages, or trust deeds, . . . the

amount of which . . . does not exceed one half of the actual value of the property covered thereby." Sec. 231.32 (1) (g), Stats. And that authorization was subject to the further limitation that when the trust fund exceeds $5,000, but does not exceed $20,000 (the entire trust fund in the case at bar was about $12,000), the proportion of any one trust fund that may be so invested by the trustee shall not exceed forty per cent. of the entire trust fund, unless the amount of the first mortgage does not exceed $6,000. Sec. 231.32 (2) (b), Stats. Consequently, the trustee's acceptance in 1920 of the new note for $8,450, secured by only a second mortgage, as an investment of trust funds, was in violation of the statute, because of the inferior character of the security which he then accepted, and because the amount of the investment exceeded the percentage of the trust fund which he was authorized to invest in even a first mortgage. Instead, he should have exercised due diligence and reasonable skill to collect the debt, and if he was unable to enforce payment it was his duty to submit the matter to the court for instructions. In accepting this improvident form of investment without then reporting the existence of any occasion therefor, and without being authorized so to do, he acted at his own risk and peril, and must be held responsible for the loss which has resulted. *Will of Leonard,* 202 Wis. 117, 230 N. W. 715, 720. Neither the trustees, nor the courts in passing upon the administration of trust estates, can disregard the safeguards prescribed by law or instruments of trust for proper management and preservation of trust funds. As to the court's duties, this court but recently said in *Will of Leonard, supra:*

"Courts should zealously protect and preserve estates placed by the law under their control. '. . . The standard of care in protecting property rights under judicial control, in the administration of trusts, depends on the conceptions of duty by trial judges and the pains taken by them to make

the same effective.' *Sloan v. Duffy,* 117 Wis. 480, 486, 94 N. W. 342, 345."

As to trustees, this court said in *Estate of Allis,* 191 Wis. 23, 209 N. W. 945, 210 N. W. 418:

"Wisconsin early adopted the rule that trustees must exercise more than ordinary diligence and vigilance in the management of a trust estate. . . . This state has consistently adhered to the strict rule with reference to the liability of trustees, early adopted in New York, rather than to the more liberal rule adopted in Massachusetts. . . . The trustee must always bear in mind that he is dealing with trust funds, which were not given him to be used in developing or furthering business enterprises, but to be guarded carefully and invested cautiously, so that principal, as well as interest, may be forthcoming at the appointed time. . . . This necessarily excludes all speculation, all investments for an uncertain and doubtful rise in the market, and, of course, everything that does not take into view the nature and object of the trust, and the consequences of a mistake in the selection of the investment to be made. . . . The law requires that the judgment of the trustee be enlightened and guided by the approved rules applicable to the investment of trust funds, not to his uninformed, personal judgment, exercised without reference to legal rules and principles."

In *Will of Leitsch,* 185 Wis. 257, 201 N. W. 284, this court, applying the rule stated in 1 Perry, Trusts and Trustees (6th ed.) § 465, viz.:

"If no directions are given in a will as to the . . . investment of the trust property, trustees, to be safe, should take care to invest the property in the securities pointed out by the law. . . . In the absence of directions in the will, it is more reasonable to suppose that a testator intended that his trustees should act according to law,"—

held that although trust funds consisted of an investment which the testator had made in a business which he had built up and made profitable, those facts did not authorize the testamentary trustee to continue such investments be-

'yond a reasonable time for conversion and reinvestment in securities prescribed by law (sec. 231.32, Stats.), in the absence of directions in the will.

So, in the case at bar, assuming that the trustee was authorized to accept the original note and mortgage of April 24, 1915, he was not authorized, after the maturity thereof, to continue that investment of trust funds in an obligation secured only by a second mortgage, which was considerably in excess of one half of the actual value of the equity in the property on which that mortgage was a lien. It was incumbent upon him to exercise due diligence and reasonable skill to reduce that original investment to cash, and then reinvest it in some obligation and security authorized by sec. 231.32, Stats. If he had performed that duty in 1920, and the value of the farm, as was established by his proof, was $22,100 in 1918 and $23,050 in 1920, then there probably would have been no loss of that trust fund. At all events, a substantial part thereof could then undoubtedly have been preserved, and the serious loss which ultimately resulted could and should have been prevented. Consequently he is chargeable with that loss, and the order of the county court should have surcharged his account for the amount thereof, together with simple interest thereon from April 28, 1920, less the items of interest and rents of the farm which were received by him since that date, for which he has heretofore accounted.

As, by reason of the controversy and ensuing litigation between the trustee and the petitioning beneficiary, the trustee has lost the faith and confidence of the beneficiary and become unsuitable to discharge the trust, the court should have ordered the removal of Durst as trustee.

*By the Court.*—Order reversed, with directions to enter an order as indicated in this opinion, with costs to appellant.