ESTATE OF GEHL: GEHL and another, Trustees, Appellants, v. HANSEN and others, Respondents.*

*September 10—October 7, 1958.*

* Motion for rehearing denied, with $25 costs, on December 2, 1958.

For the appellants there were briefs and oral argument by *E. A. Kletzien* of Menomonee Falls.

For the respondents there was a brief by *O'Meara & O'Meara* and *C. J. Schloemer,* guardian *ad litem,* all of West Bend, and oral argument by *Mr. Thomas O'Meara, Jr.,* and *Mr. Schloemer.*

HALLOWS, J.   The basic question in this appeal is whether there was sufficient grounds proven for the court to remove the trustees.   The petition of itself does not state sufficient grounds for the removal of the trustees.   It merely alleges as grounds for removal that the trustees desired to sell the stock to the Gehl Guernsey Farms, Inc., and that the petitioner believes the trustees cannot properly represent the trust in this sale while they are officers and directors of the proposed purchaser.   The trustees were placed in a position of a possible conflict of interest by their father, the testator, when he appointed them in his will as trustees of the trust and also gave each of them stock in the company and together the controlling interest.   After the death of Oliver N. Gehl, because of the purchase of part of his stock by the company, the two remaining trustees did not have control of the majority of the stock as individuals of the company but they did as individuals and trustees of the two trusts.   The main contention of the respondents is that the trustees as directors so managed the company that no dividends were declared even though there were profits, thus depriving the respondents of any income from the trust.   From a review of the record it appears that the company did earn some profit during the life of the trust although it is not clear how much. The trustees testified it was necessary and sound business judgment to retain all profits in the company to expand the business in order to keep its competitive position in the industry.   The company was short of cash working capital for many years.   In 1948 the company obtained a substantial R.F.C. loan, which was paid about three years ago.   In January, 1956, the company purchased another dairy for $150,000, which will be paid off in a year and one half or two.   The company has paid a large sum of money to the life beneficiaries which was owed to them from the estate of their mother and which by some arrangement, not clear in the record, has become the obligation of the company.   The

company does not expect to pay any dividends for the next seven to ten years.

The point of difference between the parties is whether the trustees should have caused the company to pay dividends when it made or makes profits or whether such profits should have been kept in the business for capital expansion and corporate purposes. In order to provide some income for the life beneficiaries the trustees offered in the summer of 1956 to have the company buy the stock of the beneficiaries for $80 a share, which offer was rejected. The trustees later made a proposal to the beneficiaries to have the company exchange the common stock in the trust for Class B preferred stock with a guaranteed dividend of four and one-half per cent and which stock would be retired over a period of fifteen years. The trustees had the common stock of the company appraised, in which appraisal the company was compared with several other companies in the industry, and a market value placed on the stock of $45 to $50 a share. The book value of the stock was $167.22 per share and the market value was depressed because the stock had not paid dividends. It is not clear under the proposal at what price the preferred stock would be retired.

This court has decided a petition for the removal of testamentary trustees is addressed to the sound discretion of the trial court and its action will not be reversed in the absence of an abuse of such discretion. *Will of Gabel* (1954), 267 Wis. 208, 64 N. W. (2d) 853; *Welch v. Welch* (1940), 235 Wis. 282, 290 N. W. 758, 293 N. W. 150. In determining the abuse of discretion this court does not balance evidence on appeal as if it were a trial court. To disturb the findings of a trial court they must be contrary to the great weight and clear preponderance of the evidence. *Estate of Allis* (1926), 191 Wis. 23, 209 N. W. 945, 210 N. W. 418. However, in the record of this case we do not find any substantial grounds for removing the trustees or that the findings of the trial

court are sufficient to remove the trustees. The conflict of interest between the trustees and the beneficiaries was created by the testator. He must have realized this in providing their actions should be without impeachment excepting for lack of good faith. The failure of this family corporation to pay dividends when the trustees acting as directors believed it was in the best interests of the company and sound business practice not to pay dividends in order to expand the company to keep its competitive position in the industry does not amount to a lack of good faith on the part of the trustees. There is no showing that the trustees mismanaged the company or that their decisions not to pay dividends and to expand the company were not dictated by sound business practice. The respondents have shown the trustees were receiving $16,000 a year salary for their services as officers but have not shown such salary to be unreasonable under the circumstances. It is true there were some earnings of the company during the life of the trust, no part of which the trustees as directors declared out as dividends. But until there is a showing that dividends could or should have been paid by the company under sound business practices and were arbitrarily withheld by the action of these trustees, they cannot be charged with misconduct in failing to vote as directors for the payment of dividends. *Estate of Wakefield* (1925), 188 Wis. 322, 206 N. W. 76. To remove the trustees of a testamentary trust set up by the father of the trustees and the life beneficiaries, which assets consisted of stock in the family corporation in which the trustees have been actively engaged during the life of the trust and during part of the lifetime of their father, more is needed in the way of proof to show lack of good faith than the showing here made.

This does not mean, however, that the trustees in such a situation are not bound to exercise their discretion as prudent and provident persons would act under the same or similar

circumstances. *Welch v. Welch, supra.* A trustee has a strict duty of loyalty to the trust even though the will or trust instrument gives the trustee broad powers of discretion. These powers must be exercised according to law and consistent with the duties and obligations as trustee of the trust. *Estate of Allis, supra.*

The trustees did not violate their trust or threaten to violate the trust by making the offer to purchase. Sec. 323.06, Stats., was not violated either as it existed prior to the amendment of 1957 by ch. 524 or thereafter. This section now prohibits a trustee from purchasing or being interested in the purchase of any real or personal property in the trust estate unless the sale is made with the written consent of the parties concerned and approval of the court after notice and hearing except when authorized by the terms of the trust. Here the trustees sought to comply with this section. Sec. 312.11 provides for the removal of trustees for various causes, including fraud, unfitness, waste, and mismanagement. There is no proof of any of these causes.

Respondents contend the fact of litigation between the beneficiaries and the trustees and the beneficiaries' dissatisfaction with the trustees now makes the trustees unsuitable persons to execute the trust under sec. 231.26, Stats. This section provides: ". . . the circuit court may remove any trustee who shall have violated or threatened to violate his trust, or who shall be insolvent, or whose insolvency shall be apprehended, or who for any other cause shall be deemed an unsuitable person to execute the trust." There is no doubt that the respondents are dissatisfied with the trustees. The dissatisfaction of the beneficiaries alone is not sufficient to remove the trustees. The respondents' argument, carried to its logical conclusion, would give every beneficiary, upon the litigating of a question of trust administration, the right to have the trustee removed. The cases of *Estate of Dreier* (1931), 204 Wis. 221, 235 N. W. 439, and of *Laughlin v.*

*Griswold* (1922), 179 Wis. 56, 190 N. W. 899, cited by the respondents, are not in point. In the *Dreier Case* the trustee was held personally liable for loss on an investment not authorized by the statute on investment of trust funds and had so performed his duty as trustee that he had lost the faith and confidence of the beneficiary. In the *Laughlin Case* the beneficiary had a right to appoint a cotrustee, which was opposed by the trustee. There was not only a state of ill feeling existing between the beneficiary and the trustee but the trustee was antagonistic to the best interest of the beneficiary in his handling of the trust to the point where he had an open and avowed hostility toward the beneficiary.

We are not unmindful the trustees violated their trust because of the failure to file an inventory and annual account. Their attention was called to it by the county court in its letter of July 14, 1954. The trustees thereupon and thereafter filed annual accounts. Everyone interested in the trust knew the inventory would show only the 573 shares of Gehl stock and that the accounts would show the trustees had received no income on the stock. While in some cases a failure to file annual accounts coupled with other facts might tend to show mismanagement of the trust or a scheme to cover up fraudulent acts of the trustees, no such claim is asserted here. Under the facts of this case this court believes the failure to file the accounts is not sufficient reason to remove the trustees.

*By the Court.*—That part of the order appealed removing the appellants as trustees is reversed.

MARTIN, C. J., took no part.

FAIRCHILD, J. (*dissenting*). In my opinion, the circumstances shown by the record place the matter of removal within the discretion of the county court; it has not been established that the court abused its discretion.