ZIMMERMANN, Respondent, v. BRENNAN, Defendant: REDELL and another, Appellants.

*No. 264. Argued November 28, 1972.—Decided January 3, 1973.*
(Also reported in 202 N. W. 2d 923.)

624

For the appellants there was a brief by *Brennan & Brennan* and *Joseph K. Brennan,* all of Milwaukee, and oral argument by *Joseph K. Brennan.*

For the respondent there was a brief by *Walther & Halling,* attorneys, and *David L. Walther* and *F. M. Van Hecke* of counsel, all of Milwaukee, and oral argument by *David L. Walther.*

HALLOWS, C. J.   In 1961, Advertising Art Studios, Inc., established an employees' profit-sharing plan which met the approval of the Internal Revenue Service for tax purposes. Redell, the vice-president and chairman of the board of the Studios, was an owner of one half of the common stock; Jahnke, the president and art director, owned the other one half of the outstanding common stock. Brennan was the attorney for the company

and for Redell and Jahnke. Redell, Jahnke, and Brennan were appointed trustees of the plan. Under art. XII, sec. 2, of the plan, it was provided that upon a termination of employment prior to retirement, the value of an employee's interest in the fund would become payable in the sole discretion of the trustees either in a lump sum within ninety days after the termination or in annual instalments over a period not to exceed ten years. The plan also provided in sec. 7 of that article[1] that an employee who became employed in a competitive business in the Milwaukee area within one year of his termination would forfeit all his rights to any unpaid portion of his vested interest. In such an event, the amount so forfeited would be reallocated to the accounts of the remaining participants on the same basis as a current contribution.

Zimmermann was an employee of the Studios and a beneficiary of the profit-sharing plan since its inception in 1961. In September of 1970, he left the employ of the Studios, allegedly to return to graduate school. There was a discussion between Zimmermann and representatives of the Studios concerning the payment of his vested interest under the plan, which at that time amounted to $8,776.67. Zimmermann wished this amount to be paid in a lump sum so he could support himself while at school. It was contemplated that Zimmermann would do free-lance work for the Studios while in school, but a disagreement developed over whether he should make contacts directly with a particular client, Barkin-Herman & Associates, or whether the Studios should make

---

[1] "Any employee who, after termination, becomes employed in a competitive business in the Milwaukee area within one year of his termination shall forfeit all his rights to any unpaid portion of his vested interest under this plan. Any amount forfeited under this section shall be allocated to the accounts of the remaining participants on the same basis as a current contribution."

the contacts and turn the work over to Zimmermann. A dispute also arose over whether Zimmermann should be paid $8 an hour or one half the fee. Zimmermann had apparently brought the Barkin-Herman account to the Studios and feared that if the work at the Studios were scarce, the regular employees would get the Barkin-Herman work rather than he. In this state of affairs on November 23, 1970, the trustees notified Zimmermann they had determined to pay his benefits "in annual installments over a period not to exceed ten years." Zimmermann reacted by commencing this suit on December 31, 1970, to remove Redell, Jahnke, and Brennan as trustees.

The trustees demurred and the demurrer was sustained as to Brennan and overruled as to Redell and Jahnke. Zimmermann moved for summary judgment, which was ultimately denied, but in the course of this litigation, it was disclosed that Zimmermann had not returned to graduate school but rather, accepted a position with the Barkin-Herman agency. The trustees then informed Zimmermann that under the terms of the profit-sharing agreement he had forfeited all his benefits under the plan on the ground he was engaged in competition with Studios within one year of the termination of his employment with the Studios.

Upon the trial of the action, the court found that because of the forfeiture, Redell and Jahnke would each receive an allocation of $988.72 to their personal accounts in the plan and that a conflict of interest thus existed. The court also found that by reason of the controversy, Zimmermann, as a beneficiary, had lost confidence in the trustees and therefore they became unsuitable to discharge the duties of their trust. The trial court was emphatic in finding neither Redell nor Jahnke were guilty of any misconduct as a trustee. Thus the question is raised whether trustees of an employees' profit-shar-

ing plan can be removed because of conflict of interest based on their simultaneous position as trustees and benficiaries of the trust. If they can, then no beneficiary of a pension or a profit-sharing trust in which forfeitures are added to the share of the remaining beneficiaries can be a trustee.

A trustee under sec. 231.26, Stats. 1969,[2] may be removed by a circuit court when it finds the trustee to be "an unsuitable person to execute the trust." Does a mere conflict of interest of the type existing in this case render a trustee an unsuitable person? Redell and Jahnke rely on the *Estate of Gehl* (1958), 5 Wis. 2d 91, 92 N. W. 2d 372, for the proposition they cannot be removed because of a possible conflict of interest, and we think rightly so. In *Gehl* this court refused to remove testamentary trustees who had a conflict of interest on the ground the testator, the father of the trustees and of the beneficiaries of the trust, knew of the conflict when he created the testamentary trust and appointed his beneficiary sons as trustees; therefore, that ground for removal was not applicable and the trustees could be removed only for misfeasance or malfeasance in office. This holding represents an exception to the general rule.

This court has been solicitous in its requirement of impartiality and utmost fidelity of a trustee in the performance of his duties. *See Estate of Martin* (1968), 39 Wis. 2d 437, 159 N. W. 2d 660. In *Estate of Wakefield* (1925), 188 Wis. 322, 206 N. W. 76, we pointed out

---

[2] "231.26 **Removal of trustee.** Upon the complaint of any person interested in the execution of an express trust, and under such regulations as shall be established by the court for that purpose, the circuit court may remove any trustee who shall have violated or threatened to violate his trust, or who shall be insolvent, or whose insolvency shall be apprehended, or who for any other cause shall be deemed an unsuitable person to execute the trust."

a person's position as officer or director of a company in which trust assets were invested was not hostile to or inconsistent with his duties as a trustee. In most cases involving removal of trustees, mismanagement of trust funds has been present, although in some cases such mismanagement was associated with inconsistent duties. *Estate of Dreier* (1931), 204 Wis. 221, 235 N. W. 439; *Will of Gabel* (1954), 267 Wis. 208, 64 N. W. 2d 853; *Estate of Scheibe* (1966), 30 Wis. 2d 116, 140 N. W. 2d 196. The high standards to which trustees are held, as established in these cases—standards which go beyond honesty and good faith—are not modified one jot or tittle by this opinion. But these standards do not mean that a trustee who stands to gain from a decision adverse to the interest of a beneficiary may be removed from a profit-sharing trust when the parties to the profit-sharing trust know and consent to the dual position of the trustee.

The unique character and purpose of a profit-sharing trust must be considered. Such a trust is for the benefit of both the employee and the employer. The individual trustees often represent or are identified with either the employer or the employees, so to speak, and both these parties acknowledge that the trustees, who are company employees or directors or stockholders, may have a conflict of interest. The acceptance of this fact by the parties to the trust agreement creates a trusteeship which contemplates the potential or the possibility of a conflict which is unlike the usual trusteeship where an impartial and disinterested trustee is sought. Consequently, a conflict of interest alone in a trust not contemplating disinterested trustees cannot be a ground for removal of such trustees as such conflict would be in cases of a trust contemplating trustees without any conflict of interest.

Profit-sharing plans are treated as a contract between employer and employees; the trust is the implementation of the plan in action. *Zwolanek v. Baker Mfg. Co.* (1912), 150 Wis. 517, 137 N. W. 769. *See also: Voigt v. South Side Laundry & Dry Cleaners* (1964), 24 Wis. 2d 114, 128 N. W. 2d 411. Thus, as in *Zwolanek* and *Voigt*, actions under employee-benefit plans are typically grounded in contract for recovery of benefits.[3] When trust theory has been utilized, it has involved either recovery against the trustee for breach of trust duties (*e. g.*, conversion, mismanagement) or injunctive and declaratory relief to enforce fiduciary obligations.[4]

In the instant case, the trustees were not found to have committed any act of mismanagement or of making a decision motivated by self-interest. The trustees found Zimmermann was competing with the Studios by working with Barkin-Herman & Associates. Upon this finding the vested rights of Zimmermann were forfeited, not by the acts of the trustees, but by the acts of Zimmermann under the terms of the trust agreement. No issue is raised in this case that the finding of the trustees to the effect Zimmermann was competing is incorrect. Zimmermann argues only that the trustees are without power to make such a finding or to make any

[3] *See, e. g., Parks v. Prudential Ins. Co.* (1951 D. C. Tenn.), 103 Fed. Supp. 493, affirmed 195 Fed. 2d 302 (6th Cir. 1952); *In re Schenectady Ry. Co.* (1950 D. C. N. Y.), 93 Fed. Supp. 67; *Magee v. San Francisco Bar Pilots Benevolent & Protective Asso.* (1948), 88 Cal. App. 2d 278, 198 Pac. 2d 933; *Cantor v. Berkshire Life Ins. Co.* (1960), 171 Ohio St. 405, 171 N. E. 2d 518; *Wilson v. Rudolph Wurlitzer Co.* (1934), 48 Ohio App. 450, 194 N. E. 441.

[4] For a good discussion of cases dealing with a trust approach, *see Pension Plans and the Rights of the Retired Worker,* 70 Columbia L. Rev. (1970), 909, and Ziskind, *The Law of Employee Benefit Plans,* 1955 Wash. U. L. Q. 112.

finding. Nor is there any issue that the trustees acted in violation of the trusteeship in determining Zimmermann should receive his benefits in installments rather than in a lump sum. Indeed it would seem the trustees would have been derelict in their duties to the Studios had they decided to pay Zimmermann his benefits in a lump sum within ninety days when they had reason to know he intended to compete or might compete with the Studios within one year. The profit-sharing plan was to prevent, or at least discourage, as part of its purpose, the employees' voluntary termination of employment and subsequent competition with the Studios at least for one year after such termination. This was one of the benefits the employer received from the plan.

Our holding is restricted to the facts of this case, *i.e.*, a profit-sharing plan which contemplates a trustee who, as beneficiary, may have a conflict of interest. We also hold the beneficiary's loss of faith and confidence in the trustee as a result of litigation is not a ground for removal and does not render the trustee unsuitable to execute the trust within the meaning of sec. 231.26, Stats. There must be some reasonable justification for the loss of faith and confidence in the trustee; otherwise, any beneficiary could control a trustee by such a power of removal. There are no justifiable grounds for any loss of confidence by Zimmermann in the trustees. Besides, Zimmermann is only one beneficiary; even all the other employees are not the sole beneficiaries of the plan. True, they receive monetary benefits if they, as employees, fulfill the requirements of the plan, but the *quid pro quo* of those benefits is also a benefit to the studios— part of the purpose for which the profit-sharing plan was established by the employer. Most removals of trustees grounded on loss of faith and confidence have also involved mismanagement or open hostility toward

the beneficiaries to the point where the trustee could not impartially exercise his duties. *Estate of Dreier, supra; Laughlin v. Griswold* (1922), 179 Wis. 56, 190 N. W. 899. The argument that a beneficiary's loss of confidence and faith in the trustee is sufficient to remove the trustee was rejected in *Estate of Gehl, supra.*

Zimmermann on this review argues Brennan should also have been removed as trustee because, as attorney for Redell and Jahnke and the Studios, he had a conflict of interest. The conflict, if any, was considerably less in Brennan's case than in Redell's and Jahnke's because he had no personal conflict in the sense of a financial gain to be reaped by any decision made as trustee. Mr. Brennan was not an employee of the Studios but its attorney. We find no merit in this argument and the court did not err in not removing Mr. Brennan.

*By the Court.*—That part of the judgment removing Redell and Jahnke as trustees is reversed, and that part of the judgment dismissing the action as to Joseph K. Brennan is affirmed.