Thomas MASSEY, Robert Massey, Peter Massey and John Massey, Appellants–Plaintiffs,

v.

ST. JOSEPH BANK AND TRUST CO., Appellee–Defendant.

No. 3–580A128.

Court of Appeals of Indiana, Third District.

Oct. 30, 1980.

Rehearing Denied Jan. 6, 1981.

Timothy W. Woods, South Bend, for appellants–plaintiffs.

Charles M. Boynton and Gerald A. Kamm, Doran, Manion, Boynton, Kamm & Esmont, South Bend, for appellee-defendant.

STATON, Judge.

Thomas Massey, Robert Massey, Peter Massey and John Massey are beneficiaries of a trust. They filed a petition in probate court to have the trustee of their trust removed. After a trial, the probate court denied their petition to remove the St. Joseph Bank and Trust Co. as the trustee. They present these issues on appeal for our review:

(1) Whether it was contrary to the evidence and the law for the probate court to decide that the trustee had not breached its duty of loyalty to the beneficiaries; and,

(2) Whether it was contrary to the evidence and the law for the probate court to determine hostility did not exist between the beneficiaries and the trustee.

We affirm.

The facts pertinent to the resolution of the issues here raised are as follows. On February 9, 1977, the marriage of James L. and Kathryn K. Massey was dissolved. As part of the property settlement under the divorce decree, the "James Massey 1977 Irrevocable Trust" was established for the sole purpose of funding the post–high school education of the Masseys' four chil-dren, Thomas, Robert, Peter and John. The trust instrument designated the St. Joseph Bank and Trust Co. as trustee of the trust. The divorce decree gave Kathryn K. Massey the custody of her four sons, Thomas, Robert, Peter and John.

On February 9, 1977, the date of the divorce decree, the Trust was funded by James Massey with 2200 shares of Codex stock. The following day, February 10, 1977, the Bank sold 1000 shares of the Codex stock for the purpose of diversification. However, more than a year elapsed before Kathryn Massey and her sons learned of the Bank's determination of the federal tax consequences with respect to this sale. The Bank, through the use of an independent certified public accountant, computed and paid federal taxes amounting to $15,393. This tax amounted to approximately 15% of the Trust corpus.

Kathryn Massey's accountant advised her to consult an attorney because, in his opinion, the Trust should not have paid the taxes. Kathryn Massey's accountant and attorney met with the Bank's accountant. They requested that the Bank file an amended return. The amended return would show no federal taxes owing and would seek a total refund of the $15,393 which had been paid when the original return was filed. Although the Bank's accountant agreed to this procedure, the Bank petitioned the probate court on September 26, 1978, for instruction. As acknowledged by the Bank, the instruction was not required for the Bank to have authority to file an amended return.[1] Despite this fact, the Bank petition requested the probate court to instruct the Bank to file an amended return.

On February 15, 1979, Kathryn Massey and her sons requested the Bank to consent to a voluntary change of trustee. The Bank failed to respond, and Kathryn Massey's attorney gave the Bank "notice" to respond within seven days or her sons, the Beneficiaries of the Trust, would file suit. The Bank still failed to respond and the

---

1. See IC 30–4–3–3 (Burns Code Ed., Supp. 1979).

Beneficiaries filed a complaint on March 15, 1979 petitioning the probate court to remove the Bank as trustee for alleged breach of loyalty and existing hostility. On April 2, 1979, the Bank wrote a letter to Kathryn Massey's attorney informing him that the Bank would not voluntarily remove itself as trustee of the Trust.

Thereafter, on May 11, 1979, probate court–in response to the Bank's petition for instruction–ordered the Bank to file an amended return for the purpose of seeking the tax refund. The Bank filed the amended return on July 18, 1979.[2] On August 13, 1979, there was a hearing upon whether the Bank should be removed as trustee. Finally, on December 7, 1979, the probate court denied the Beneficiaries petition finding no breach of loyalty and that hostility did not exist.

## I.

### Duty of Loyalty

■ The Beneficiaries first raise the issue of whether it was contrary to the evidence and law for the probate court to decide the Bank had not breached its duty of loyalty to the Beneficiaries of the Trust. The essence of the Beneficiaries argument, however, is a request for this Court to reweigh the evidence. This we decline to do.[3]

■ In the resolution of this issue, there are two particularly pertinent rules of appellate review which we must follow. First, the Beneficiaries are appealing a negative judgment. Therefore, they must establish that the evidence is without conflict and leads but to one conclusion which was not reached by the probate court. *Indiana Consolidated Insurance Co. v. Mathew* (1980), Ind.App., 402 N.E.2d 1000; *Umbreit v. Chester B. Stem, Inc.* (1978), Ind.App., 373 N.E.2d 1116. Upon the review of a negative judgment, this Court will not reweigh the evidence nor resolve issues of credibility, but will scrutinize the evidence in the record most favorable to the judgment. *Indiana Consolidated Insurance Co., supra; Link v. Sun Oil Co.* (1974), 160 Ind. App. 310, 312 N.E.2d 126. This same standard of review applies even where the case lies in equity. *Lawyers Title Insurance Corp. v. Capp* (1977), Ind.App., 369 N.E.2d 672; *Harris v. Second National Bank of Hamilton Ohio* (1970), 146 Ind.App. 468, 256 N.E.2d 594.

■ Secondly, the removal of a trustee is within the sound discretion of the probate court. IC 30-4-3-29, –30 (Burns Code Ed.); *In re Bixby's Estate* (1961), 55 Cal.2d 819, 13 Cal.Rptr. 411, 362 P.2d 43, 55 Cal.2d 819; *Phillips v. Moeller* (1961), 148 Conn. 361, 170 A.2d 897; *In re Wright's Petition* (1956), 35 Del.Ch. 476, 121 A.2d 911; *Chicago Title & Trust Co. v. Chief Wash Co.* (1938), 368 Ill. 146, 13 N.E.2d 153; *Jennings v. Murdock* (1976), 220 Kan. 182, 553 P.2d 846; *Holmes*

---

**2.** As of the date of this appeal, the Internal Revenue Service had not made a determination with respect to the tax liability of the sale of the Codez stock.

**3.** This Court is greatly disturbed by the failure of the appellant's brief and reply brief, as well as the appellee's brief, to comply with Ind. Rules of Procedure, Appellate Rule 8.3. AP. 8.3(A)(7) states, in pertinent part:

"The argument shall contain the contentions of the appellant with respect to the issues presented, the reasons in support of the contentions along *with citations* to the authorities, statutes, and *parts of the record relied upon*, and a clear showing of how the issues and contentions in support thereof relate to the particular facts of the case under review." (Emphasis added.).

And AP. 8.3(B) provides that the appellee's brief shall conform to the same requirement. Although similar failures have often been deemed as waiver of the issues, *see, e. g., Anderson v. Indiana State Employees' Comm'n* (1977), Ind.App., 360 N.E.2d 1040; *Newell v. Standard Land Corp.* (1973), 156 Ind.App. 597, 297 N.E.2d 842; *Clemans Truck Lines, Inc. v. Vaughn* (1966), 139 Ind.App. 404, 213 N.E.2d 470, we prefer to reach the merits of this case since the paramount duty of this Court, as a Court of equity, is to assure the Trust is properly executed and the Trust corpus preserved. *See, e. g., May v. May* (1897), 167 U.S. 310, 17 S.Ct. 824, 42 L.Ed. 179; *In re Cattel's Estate* (1944), 28 Del.Ch. 115, 38 A.2d 466; *Achenbach v. Baker* (1940), 151 Kan. 827, 101 P.2d 937; *Yeates v. Box* (1945), 198 Miss. 602, 22 So.2d 411; *Braman v. Central Hanover Bank & Trust Co.* (1946), 138 N.J.Eq. 165, 47 A.2d 10.

*v. Sharretts* (1962), 228 Md. 358, 180 A.2d 302; *Shelton v. McHaney* (1938), 343 Mo. 119, 119 S.W.2d 951; *In re Fraiman's Estate* (1962), 408 Pa. 442, 184 A.2d 494. *Cf. Tait v. Anderson Banking Co.* (S.D.Ind. 1959), 171 F.Supp. 3 (interpreting Indiana law); *Ex parte Kilgore* (1889), 120 Ind. 94, 22 N.E. 104; *Wilson v. Edmonds* (1922), 78 Ind.App. 501, 136 N.E. 48. This Court will not reverse the lower court except upon a finding of a clear abuse of its discretion. *Loeb v. Loeb* (1969), 252 Ind. 96, 245 N.E.2d 831; *State v. Hayes* (1978), Ind.App., 378 N.E.2d 924; *Freeman v. Freeman* (1973), 159 Ind.App. 98, 304 N.E.2d 865; *Guraly v. Tenta* (1956), 126 Ind.App. 527, 132 N.E.2d 725. As previously stated by this Court:

> "An abuse of discretion is an erroneous conclusion and judgment, one clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable and actual deductions to be drawn therefrom. The exercise of a lower court's discretion is not reviewable, rather it is only the alleged abuse of the power which is reviewable on appeal...."

*Dunbar v. Dunbar* (1969), 145 Ind.App. 479, 483, 251 N.E.2d 468, 471.

Within the strictures of these appellate rules of review, we must uphold the probate court's denial of the petition to remove the Bank as trustee. In so doing, however, we must emphasize that we are not approving of the Bank's performance of its duties as trustee. Nor do we approve the Bank's *apparent* lack of initiative in pursuing the best interests of the Trust and its beneficiaries.

James L. Massey–even though technically the grantor or settlor of this Trust–has *no* interest in this irrevocable trust and, therefore, should not be consulted in any capacity other than that as father of the Beneficiaries.[4] That is, the financial interests of James L. Massey are completely irrelevant to, and should not be confused with, the financial interests of the Trust.[5]

■ We adopt with approval the following statement by Bogert:

> "One of the most fundamental duties of the trustee is that he must display throughout the administration of the trust complete loyalty to the interests of the beneficiary, and must exclude all selfish interest and all consideration of the interests of third persons."

Bogert, Trusts & Trustees § 543, p. 197–98 (2d ed. 1978). Logically following from Bogert's statement, and from the very meaning of loyalty,[6] the concern of this Court is

---

4. The Trust indenture provides in part:

   "6. *Irrevocability.* This Agreement and the trust hereby created shall be irrevocable. It shall not be altered, amended, revoked or terminated, in whole or in part, by the Grantor. No part of the principal or income of the trust shall ever revert to or be used to the benefit of the Grantor or be applied to the payment of premiums upon policies of insurance on the life of the Grantor or be used to satisfy any legal obligations of the Grantor. The Grantor hereby renounces for himself and his estate any interest, either vested or contingent, including any reversionary right or possibility of revertor, in the principal and income of the trust, and any power to determine or control, by alteration, amendment, radification [*sic*], or termination or otherwise, the beneficial enjoyment of principal or income of the trust."

5. Although this Court will not weigh the evidence nor judge the credibility of witnesses, that does not mean this Court is blind to the evidence in the record before us. In fact, we cannot help but see the Bank's seeming overall

reluctance to pursue the refund of the taxes paid which, as trustee, the Bank should pursue with the total vigor of an advocate. We point out to the Bank IC–30–4–3–6(b) (Burns Code Ed.) which outlines among other duties of a trustee, the Bank has a duty:

   "(1) to administer the trust solely in the interest of the beneficiaries;

   \*   \*   \*   \*   \*   \*

   "(3) to take possession of and maintain control over the trust property;

   "(4) to preserve the trust property;

   \*   \*   \*   \*   \*   \*

   [and]

   "(9) to take whatever action is reasonable to realize on claims constituting part of the trust property...."

6. The Random House Dictionary, p. 851 (unabridged ed. 1969), defines loyalty as "1. the state or quality of being loyal: faithfulness to commitments or obligations ..." and lists as synonyms, "fealty, devotion, constancy."

with an apparent divided loyalty demonstrated by the trustee. We emphasize that in the present case there is a paucity of evidence in the record demonstrating the divided loyalty so heartily urged by the Beneficiaries upon this Court. This paucity of evidence may lead this Court to infer certain questionable motives upon the part of a Bank for its actions, but such paucity does not mandate a reversal of the probate court's determination. Two arguments are advanced by Beneficiaries for a reversal.

First, the Beneficiaries argue the Bank's loyalty was divided between the Trust and James L. Massey. They support this argument by citing: the Bank's petition for instructions with respect to the amendment of the tax return; the Bank's "Answer" to the Beneficiaries' complaint for removal of the Bank as trustee; and, the general involvement of James Massey and his attorney in the issue of whether an amended return should be filed.

■ As noted above, James Massey has no interest in the Trust other than as father of the Beneficiaries. We cannot say, however, that the probate court clearly abused its discretion in not finding the Bank to have divided loyalty. The petition states in pertinent part:

"6. The said Trustee has met with the representatives of Kathryn K. Massey, the mother of the said beneficiaries, who, for and on behalf of the said beneficiaries of the said Trust, has explained that when James L. Massey transferred the Codex Corporation stock to the Irrevocable Trust, Mr. Massey was discharging his obligations to support his minor children and, therefore, the transfer of the Trust was made for a full and adequate consideration in money or money's worth. It is the opinion of Kathryn K. Massey and her representative that the tax so determined by the Trustee and paid by the Trustee in behalf of the said Trust is in error and that the said tax should be refunded by way of amended returns being filed and claims for refund being filed on behalf of the Trust for each of the said beneficiaries' payments.

"7. The said Trustee has examined the various instruments and the various opinions with reference to the said tax matter and has determined that this action on behalf of the Trustee in filing a claim for refund will affect the interest of the Grantor of the said Trust, James L. Massey, as well as the beneficiaries of the said Trust, namely the said children above set forth.

"8. The said Trustee is of the further opinion that the only way the said matter can be settled is to apply for the tax refunds in the name of the Trust and proceed with the Internal Revenue Service to substantiate and have determined the taxability of the Trust as to whether or not the said Trust is liable for the income taxes or whether James Massey is liable for gift taxes. The action of the Trustee will affect either the interest of the beneficiaries of the Trust or the Grantor of the said Trust, and, as such, said Trustee should be instructed by the said Court as to its proper and correct procedure.

"WHEREFORE, the said Trustee prays that the said James Massey 1977 Irrevocable Trust be docketed with the Court and, further, that the Court instruct the said Trustee to (a) proceed with the filing of claims for refunds on behalf of the four beneficiaries of the James Massey 1977 Irrevocable Trust, applying for the said refund of the tax and for the collection of interest thereon; (b) that the said James Massey be so notified of the actions of the Trustee and that he be requested to appear in this action, so that his interests may be represented; (c) that the said Kathryn K. Massey as the mother of the said children be notified, so that she may appear and have her rights represented in this matter . . . ."

At the hearing for the removal of the Bank as trustee, Daniel Curry—trust officer for the Bank—testified as follows with respect to the petition and the involvement of James Massey:

"Q. [by Beneficiaries' counsel] When your Bank or you, I will say you

because you filed the petition for instructions, filed this petition for instructions, you notified Mr. Massey, the Grantor of the Trust?

"A. I am not sure we notified him or his attorney.

"Q. Either one?

"A. That's right.

"Q. Why?

"A. Because he is the father of the beneficiaries.

"Q. What interest did he have in this trust?

"A. As the parent of the beneficiaries.

"Q. ·Other than that why did you notify him of your petition for instructions?

"A. It possibly could affect his own situation or his own financial standing at the time the trust was created. We felt all the people who possibly had an interest in the trust should be given notice of that proceeding so the Court—everybody could present their side or their position so we could reach a solution that was amicable to everyone.

"Q. And it is true one of your concerns was what would happen to Mr. Massey's tax situation if an amended return was filed on behalf of these four trusts.

"A. I wouldn't say that was a considera-. tion. What concerned us was somebody raising a question at a later date that should really be answered at this time."

From the evidence as a whole, we cannot say it was unreasonable and clearly an abuse of the probate court's discretion in finding no divided loyalty. For example, it would not be unreasonable for the probate court to infer that the Bank was solely concerned with all interested parties being represented at the hearing.

We further recognize that a question of divided loyalty could be raised from the Bank's "Answer" to the Beneficiaries' petition for the removal of the Bank as trustee. The answer states, in part:

"10. Further the said Trustee has endeavored [sic] to protect the interest of all the parties, not only the beneficiaries but the Grantor of the said Trust, by filing its request for instructions as heretofore set forth that the said Trustee has by its actions herein attempted to protect not only the beneficiaries but all the parties concerned."

Again, we emphasize that we will not reweigh the evidence, and from the record as a whole, we cannot state that it was unreasonable to conclude that this was not a breach of loyalty. For example, this one paragraph of the answer could be reasonably construed as explaining prior actions taken by the Bank.

Finally, there is some slight evidence in the record with respect to James Massey's actual involvement in this case. We discern from the record that his attorney forwarded the same contention as the Bank–that the amended return should not be filed. This, plus the fact that the Bank notified James Massey of the pending issue of the tax liability, is not clearly in contravention of the probate court's determination. At most, we are left with only an inference that the Bank's loyalty was divided. The probate court could–and apparently did– find these same facts to support a conclusion that the Bank did not breach its duty of loyalty to the Trust. Further, we are unwilling to set the precedent that mere notice of a pending action by the trustee to one with an interest in conflict with the interests of the trust is a breach of trust as a matter of law.

■ The second argument of the Beneficiaries concerns the events surrounding and leading up to the filing of the amended tax return for the Trust. Specifically, the Beneficiaries point out: first, the Bank failed to voluntarily file the amended return; secondly, the Bank petitioned the probate court for instructions to file the amended return when such authority was not needed: and thirdly, the Bank's inexorable insistence upon the correctness of its original tax return–even to the point of devoting

much of its appellate brief to the merits of the original tax return which is not in issue. This Court would further note the "Statement of Facts" provided by the Bank and attached to the amended tax return not only intimates the Bank's reluctance to file an amended return, but infers that the amended return is erroneous.

Again, we decline to weigh the evidence, and we cannot conclude that the probate court abused its discretion. First, this Court would be in clear error to state that every time a trustee decided an issue with respect to the management of the trust opposing the beneficiaries' wishes the trustee had breached its duty of loyalty. Secondly, as pointed out by the Court in *Messner v. DeMotte* (1948), 119 Ind.App. 273, 281, 82 N.E.2d 900, 903, a trustee need not act at his peril, but may "under appropriate circumstances" petition the probate court for instructions. Further, IC 30–4–3–5 (Burns Code Ed.) provides in pertinent part:

"If the duty of the trustee in the exercise of any power conflicts with his individual interest or his interest as trustee of another trust, the power may be exercised only with court authorization."

And further, IC 30–4–3–18 provides in part: "If there is reasonable doubt with respect to any matter relating to the administration of the trust, the trustee is entitled to be instructed by the court."

It is this Court's opinion that the filing of the petition for instruction with respect to the amended tax return was not an "appropriate circumstance" since the trustee clearly has the power to do so without instruction. Also, such return clearly did not present a conflict of interest with the Bank's "individual interest" or "interest as trustee of another trust;" nor did the amended return raise a "reasonable doubt" with respect to the duties of the Bank. We cannot conclude that it was an abuse of discretion on the part of the probate court to find no breach of loyalty.

7. There was a serious question of tax liability brought to the attention of the Bank as trustee. After such notice, the Bank should have pursued the refund of the taxes paid for the benefit of the trust. This refund amounts to approxi-

We emphasize at this juncture, after long and grave consideration of all of the above listed allegations by the Beneficiaries, that it is not every violation of duty which requires removal of the trustee, *Sternberg v. St. Louis Union Trust Co.* (1946), D.C., 66 F.Supp. 23; *Phillips v. Moeller, supra; Wheatcraft v. Wheatcraft* (1913), 55 Ind.App. 283, 102 N.E. 42; *Braman v. Central Hanover Bank & Trust Co.* (1946), 138 N.J.Eq. 165, 47 A.2d 10; nor act of imprudence or neglect, *Massey v. Stout* (1871), 4 Del.Ch. 274; *Wilson v. Smoot* (1919), 186 Ky. 194, 216 S.W. 129; *In re Gehl's Estate* (1958), 5 Wis.2d 91, 92 N.W.2d 372; nor mistake or mismanagement, *In re Catell's Estate* (1944), 28 Del.Ch. 115, 38 A.2d 466; *Wheatcraft v. Wheatcraft, supra; In re Comstock's Will* (1945), 219 Minn. 325, 17 N.W.2d 656; *Manchester v. Cleveland Trust Co.* (1960), Ohio App., 168 N.E.2d 745; nor even errors in judgment, *First National Bank of Birmingham v. Ingalls* (1952), 257 Ala. 536, 59 So.2d 914; *Shirk v. Walker* (1937), 298 Mass. 251, 10 N.E.2d 192; *Rossi v. Davis* (1939), 345 Mo. 362, 133 S.W.2d 363; *In re Barne's Estate* (1940), 339 Pa. 88, 14 A.2d 274. Although the Bank may have been guilty of any one or more of the above, we cannot find the evidence in the record to support a determination that the probate court clearly abused its discretion in denying the removal of the Bank as Trustee.[7]

## II.

### Hostility

The Beneficiaries second allegation of error is that it was contrary to the evidence and the law for the probate court to find that hostility did not exist between the Bank and the Beneficiaries. As in the first allegation of error, the Beneficiaries seek this Court's reweighing of the evidence.

mately 15% of the trust corpus and by its very size is significant. Clearly, with a serious question of liability and a large percentage of the corpus of the trust involved, the Bank had a duty to pursue the refund with great vigor.

Unlike the first allegation of error, however, there is no conflict of evidence in the record before this Court. In fact, there is no real evidence to support the contention of the Beneficiaries. There is only the Beneficiaries' self–serving statements in their appellate brief and reply brief.

■ First the Beneficiaries argue:

"Because of the Bank's refusal to file the amended income tax returns when it was made aware of the serious and legitimate tax question concerning the tax liability of the Trusts and the Bank's acts in protecting the financial interests of the Grantor of the Trust, a great deal of friction and hostility exists between it and the beneficiaries of the Trust...."

The Bank did not refuse to file an amended tax return but petitioned the probate court for instruction to file the return. As discussed in the previous section of this opinion, such dilatory action may be evidence of poor judgment, but we cannot find it evidence of "hostility."

Secondly, the Beneficiaries contend:

"The hostility existing between the Bank and beneficiaries in this case is further evidenced by the fact that a lawsuit had to be filed by the beneficiaries against the Bank to force it to file the amended tax returns."

This is a clear misstatement of the facts of this case. No lawsuit was filed by the Beneficiaries except for the purpose of petitioning the probate court for the removal of the Bank as trustee. The Bank had already filed a petition for instructions to file the amended tax return at the time of the Beneficiaries' petition.

No further "evidence" is urged upon us by the Beneficiaries and we find none. Hostility, in fact, may exist. As stated by the Court in *Wilson v. Edmonds* (1922), 78 Ind.App. 501, 506, 136 N.E. 48, 49:

"Trusts are usually created for the purpose of withholding from the beneficiaries or other interested parties the control and disposition of the principal of the trust fund for reasons which appear sufficient to the settlor, and they are not as a general rule regarded with satisfaction by the persons who are thus deprived of the possession of the trust estate; and if the precedent here sought to be established should prevail, it would be easy for the parties, who would profit by a dissolution of the trust, to create a condition which would render such a result attainable...."

Some disagreement, friction, and even hostility may naturally exist in trust relationships. Also, in the present case, we tend to agree with the probate court's observation that some "natural" hostility probably exists,

"at least hostility naturally present between married persons in the process of having that marriage dissolved.. Here the mother, the parent with the custody of the beneficiaries of the trust, naturally wants her children to realize as much as they can from the trust at the expense of her former husband."

■ We find no real evidence of hostility, however, existing between the Beneficiaries and the Bank. Even if there was such evidence, as a general rule, hostility between the trustee and the beneficiaries is not a *per se* ground for removal of the trustee. *Matter of Estate of Amason* (1979), Ala., 369 So.2d 786; *Blumenstiel v. Morris* (1944), 207 Ark. 244, 180 S.W.2d 107; *Smith v. Biggs Boiler Works Co.* (1952), 33 Del.Ch. 183, 91 A.2d 193; *Shirk v. Walker* (1937), *supra; Vest v. Bialson* (1956), 365 Mo. 1103, 293 S.W.2d 369; *In re Koretzky's Estate* (1951), 8 N.J. 506, 86 A.2d 238; *In re Corr's Estate* (1948), 358 Pa. 591, 58 A.2d 347; *Willson v. Kable* (1941), 177 Va. 668, 15 S.E.2d 56; *In re Gehl's Estate, supra; In re Hartt's Estate* (1956), 75 Wyo. 305, 295 P.2d 985. Nor, in fact, is hostility between the trustee and the guardian of the beneficiaries a *per se* ground for removal. *Gaston v. Hayden* (1903), 98 Mo.App. 683, 73 S.W. 938; *In re Mathues Estate* (1936), 322 Pa. 358, 185 A. 768; *Moore v. Sanders* (1937), Tex.Civ.App., 106 S.W.2d 337. *See* Bogert, § 527, pp. 86–92, *supra.*

We affirm.

GARRARD, P. J., concurs in result with opinion.

HOFFMAN, J., concurs in result with opinion.

GARRARD, Presiding Judge, concurring.

I concur with the result reached and most of the majority view on the issues before us.

However, I am unable to concur with the determination that the question of whether to file an amended return was not an "appropriate circumstance" for the trustee to petition the court for instructions. *See* IC 30–4–3–18. Under the circumstances present, I find no deleterious conduct in the filing of that petition.

HOFFMAN, Judge, concurring.

I concur in the result of the majority. I concur with Garrard, P. J., in that I find no fault with the trustee petitioning the court for instructions.