BLUMENSTIEL *v.* MORRIS, EXECUTOR.

4-7360                                      180 S. W. 2d 107

Opinion delivered May 8, 1944.

*Martin, Wootton & Martin,* for appellant.

*Leo P. McLaughlin* and *Jay M. Rowland,* for appellee.

McFADDIN, J. This is an attempt by the beneficiaries to remove a testamentary trustee on the grounds of (1) absence of the trustee, and (2) hostility between trustee and beneficiaries. From a decree of the chancery court refusing the petition there is this appeal by the beneficiaries.

Simon Blumenstiel departed this life May, 1939; and in June, 1939, there was admitted to probate in Garland county, Arkansas, his last will and testament (dated May 18, 1936) and the codicil thereto (dated April 14, 1938). By these instruments John H. Morris, (appellee), was appointed executor and trustee. All of the property of the deceased was devised and bequeathed to the said trustee, and a trust established for 20 years from the death of the testator. The trustee was directed, *inter alia,* to (a) hold all securities until maturity, (b) rent the buildings, (c) keep on hand not in excess of $5,000 cash, (d) pay $200 per month to each of the two beneficiaries, Ruth Blumenstiel and Alfred Blumenstiel (children of the testator), (e) render semi-annual reports to the two beneficiaries, and (f) render any annual net income of the trust, after paying taxes, insurance premiums, legacies, and other expenses, to the said two beneficiaries, Ruth Blumenstiel and Alfred Blumenstiel. The sale of any *corpus* of the estate could be accomplished only on the concurrence of the trustee, and the two beneficiaries, and the order of the probate court. The will, as contained in the transcript before us, consists of several printed pages and most all of the will, except the first few lines, is concerned with detailed in-

structions to the trustee. The will recites: "John H. Morris and I have agreed that for his services as trustee under this will, and as executor of the will, he shall receive and be paid the sum of $200 per year . . ." The will further recites that in the event of the death or incapacity of John H. Morris then Alfred Blumenstiel (one of the beneficiaries) should serve as trustee.

The Blumenstiel estate and trust consists of stocks, securities, government bonds, and certain real estate which is business property in the city of Hot Springs, Arkansas, and leased on a long term monthly rental basis. John H. Morris served as executor from the death of the deceased, and served as trustee from the closing of the administration; and there is not the slightest intimation of anything except the utmost integrity and fidelity on his part. In the case of *Murphy* v. *Morris, Trustee,* 200 Ark. 932, 141 S. W. 2d 518, another part of the same Simon Blumenstiel will was before this court. Other facts appear hereinafter.

As previously stated only two grounds are urged by appellants for removal of the trustee; and we discuss these.

I. *Absence of the Trustee.* J. H. Morris was an officer in the United States Army in World War I; and on January 20, 1943, he again entered the military service of the United States. At the time of the trial below (June 24, 1943), when he was back in Arkansas on leave, he testified that he was then stationed at Camp Hood, Texas, serving in an administrative capacity in the Insurance Section of the United States Army. He is still a citizen and resident of Arkansas, but since January 20, 1943, he has been in the United States Army stationed in Texas; and this military service is seized upon by the appellants as a cause for the removal of Morris as trustee. Act 21 of 1943 has no application here because Morris is a resident.

Our search discloses four Arkansas cases involving the removal of a trustee; but none of these cases involved either of the particular grounds here urged. In

*Mandel* v. *Peay,* 20 Ark. 325, concerning trustees in a deed of trust, Chief Justice ENGLISH stated that if trustees should waste the property of the trust they could be removed. In *Williams* v. *Nichol,* 47 Ark. 254, 1 S. W. 243, Mr. Justice BATTLE recognized that the acts or omissions of a trustee must be such as to endanger the trust property before a trustee should be removed. In *Williamson* v. *Grider,* 97 Ark. 588, 135 S. W. 361, Mr. Justice WOOD stated that where a trustee had proceeded in accordance with the directions of a lower court the trustee should not be removed even if on appeal it should be held that the directions of the lower court were erroneous. In *Harr* v. *Fordyce,* 88 Ark. 192, 113 S. W. 1033, Mr. Justice BATTLE listed four causes for removing a trustee being, the endangering of a trust property, dishonesty, incapacity, and infidelity. The grounds for removal urged in the case at bar are different from any recognized in any of our previous cases, so we turn to text writers and general authorities.

In 65 C. J. 618 the rule is stated: ''Absence or Removal from Jurisdiction. In the absence of contrary statute, a trustee's departure from the jurisdiction does not *ipso facto* operate to deprive him of office, nor compel the court to remove him upon application, although absence in a foreign country may create a *prima facie* case for removal on petition of the *cestui*. As a general rule, removal of a trustee on the ground of non-residence or absence from the jurisdiction is discretionary with the court, which will ordinarily not regard the bare fact of absence or non-residence as ground for removal, but will remove an absent trustee where his absence endangers the trust estate, as where the absence is of a prolonged or permanent character precluding proper attention to the trust, or where, in addition to absence, there is also neglect of duty.''

The above is the most favorable for the appellants that we have been able to find concerning absence or non-residence as a ground for removal. Many of the standard authorities on Trusts either fail to discuss non-residence as a ground for removal or, else, give it scant

consideration. In Scott on "Trusts," Vol. 1, p. 556, ff, absence from the jurisdiction is not even considered. In Bogert on "Trusts and Trustees," Vol. 3, p. 1665, it is stated that absence is not necessarily a ground for removal. In Lewin on "Trusts," 14th Ed., p. 431 (an English publication), it is stated that only by virtue of a statute of England of 1925 is absence considered as grounds for removal. In 26 R. C. L. 1276 absence is not even mentioned as grounds for removal.

The cases from other jurisdictions, as cited by appellants, do not sustain appellants' contentions. In *Letcher* v. *German National Bank,* 134 Ky. 24, 119 S. W. 236, 20 Ann. Cas. 815, the Kentucky court held that non-residence of the trustee must be coupled with the endangering of the trust estate before removal of the trustee would be ordered. In the note to this case in 20 Ann. Cas. 816 there is a list of other cases sustaining the Kentucky court. In *Welch* v. *Welch,* 235 Wis. 282, 290 N. W. 758, 293 N. W. 150, the Supreme Court of Wisconsin refused to remove trustees on the bare fact of absence or non-residence. And in *Brocker* v. *Ware* (Delaware, 1942), 29 Atl. 2d 521, the court of chancery of Delaware recognized that mere non-residence of the trustee was not in itself a sufficient cause for removal. In all of these cases it was stated that there must be the endangering of the trust fund or some other matter coupled with the absence before there was a proper case for removal.

Even under the rule stated in Corpus Juris, *supra,* the appellants have made no case for removal of the trustee for at least two reasons: In the first place, the removal is in the sound discretion of the trial court. The chancery court refused the removal in the case at bar, and we cannot say that the court abused its discretion. Secondly, there is no showing, in the record here, that the trust is suffering or endangered in any way by reason of Mr. Morris' absence in the military service. He is seeing to it that the rents are regularly collected, the property insured, the taxes paid, the monthly checks sent to the beneficiaries and his semi-annual reports filed. In short he is not neglecting the trust estate; and we find

no attempted delegation of any discretionary duties. Mr. Morris is at the same time being faithful as a trustee and also serving as a loyal, patriotic citizen. Of course if Mr. Morris should be sent overseas then there might be some cause for the appointment of a temporary trustee during his absence overseas; but on the record before us the appellants have made no case for the removal of the trustee on the grounds of absence from the jurisdiction.

II. *Hostility Between Beneficiaries and the Trustee.*

The appellant, Alfred Blumenstiel, did not testify in this case. The only witness who testified for appellants was Ruth Blumenstiel; and she testified, (1) that there was hostility between her and John H. Morris, (2) that this hostility had existed from the death of the testator (her father), (3) that she had found Morris to be arbitrary, (4) that he had not consulted her, (5) that he had not followed her advice when she volunteered it, and (6) that this hostility was growing rather than diminishing. Morris on the other hand testified that he had no hostility toward Ruth Blumenstiel, but that he had refused to allow her to borrow sums of money from the trust, and he gave this refusal as the reason for her hostility toward him. There was no evidence of any hostility between Alfred Blumenstiel and the trustee. In fact, Morris testified that he had frequently discussed various matters concerning the trust with Alfred Blumenstiel, who was present in court at the time Morris testified.

We quote from a few of the authorities on this question of hostility as a ground for removal of the trustee:

In 65 C. J. 620 it is stated: "Personal hostility between a trustee and beneficiaries is not *per se* a ground for removal of the trustee, nor is the *cestui's* mere loss of confidence in a trustee ground for his removal, and where the duties of a trustee are of a purely formal and ministerial character, and there is no probable detriment to the beneficiary from hostility, the courts will ordinarily refuse to remove the trustee on this ground. But

such personal hostility is a factor to be taken into consideration, and will justify removal of the trustee where it appears that the personal hostility of the parties combines with other circumstances to render removal of the trustee essential to the interests of the beneficiary and the due execution of the trust . . .''

And in 26 R. C. L., p. 1276, it is stated: ''While, in a case where the trustee has a discretionary power over the rights of a *cestui que trust,* and has duties to discharge which necessarily bring him into personal intercourse with the latter, a state of mutual ill will or hostile feeling may justify a court in removing the trustee, it is not sufficient cause where no such intercourse is required, and the duties are merely formal and ministerial and no neglect of duty or misconduct is established against the trustee.''

And to the same effect see Bogert on ''Trusts and Trustees,'' Vol. 3, p. 1673, and Scott on ''Trusts,'' Vol. 1, p. 559. In 45 A. L. R. 331, there is an annotation on the subject ''Hostility Between Trustee and Beneficiary as Grounds for Former's Removal.'' From all of these authorities and the cases cited, we summarize the rule that: ''Mutual hostility between the beneficiaries and the trustee is sufficient ground for the court to remove the trustee if (1) the provisions of the instrument creating the trust require mutual interchange of ideas, and (2) if the hostility tends to defeat the purpose of the trust; but even in the concurrence of these two circumstances, the removal is still in the discretion of the court.''

Applying the above rule to the case at bar we fail to find any facts that would justify the removal of the trustee. Ruth Blumenstiel testified as to her feeling of hostility toward the trustee. But she was the only witness for her side, and we find no concrete facts in the record to justify her feeling. Her statements were merely generalities as evidenced by this question and answer: ''Q. Without going into those details state whether he (Morris) has taken an arbitrary stand with you, that he

is running the estate and you have nothing to do with it at all. A. Yes, that is correct."

As regards the real estate, she admitted that it was not necessary for the trustee to consult her about renting the property. As regarding the stocks and bonds, she admitted there was no reason for her to be consulted. She finally admitted that Morris had complied with every provision of the will; and then the following questions and answer show her inability to be specific: "Q. Can you tell this court of one instance where the estate of Simon Blumenstiel has suffered from any act of Johnny Morris through negligence? Can you point to one specific injury that the estate has suffered from his conduct as trustee? A. Well, no, I can't."

The trustee testified that there was no hostility on his part. He was doing his best to carry out the wishes of his former business associate. The following questions asked and answers given by Mr. Morris are in point: "Q. Did you or not occupy the same position or act in about the same capacity prior to Mr. Blumenstiel's death? A. I did. Q. For whom? A. I did for Mr. Blumenstiel and his partner, Mr. Wolf, who is present. I still act in that capacity for Mr. Wolf who is present in court. Q. I will ask you whether or not prior to Mr. Blumenstiel's death you discussed his will with him or he discussed his will with you? A. He did. . . Q. Do you know of any act or omission or anything else that you have done since you have been acting as trustee that has caused damage or injury of any sort to the estate? A. No. Mr. Blumenstiel was one of my best friends. He left me something to do, and I have tried to do it to the best of my ability."

Mr. Morris is a man who is acting as trustee of an estate that owns substantial buildings, stocks, government bonds, and other securities, who was originally under a fidelity bond of $200,000, and which was reduced to $50,000 by the probate court on request of the beneficiaries of the trust, who looks after all of this property and pays the beneficiaries their checks of $200 each per

month. For all his services Morris receives only $200 per year because of his agreement with the testator whose former partner (Mr. Wolf) retains Mr. Morris' services even at the present time. Certainly no injury to the trust or hostility on the part of Morris was shown; and one of the beneficiaries (Alfred Blumenstiel) who would succeed Morris as trustee did not even testify as to any hostility. In short, appellants did not make a case for the removal of the trustee on the ground of hostility.

Finding no error, the decree of the chancery court is in all things affirmed.