230

D. T. HARGRAVES, Jr. *v.* Richard H. HARGRAVES
and Mary Blanche HARGRAVES

CA 83-465                                    686 S.W.2d 816

Court of Appeals of Arkansas
En Banc
Opinion delivered April 3, 1985

*David Solomon,* for appellant.

*Daggett, Van Dover, Donovon & Cahoon,* by: *Jimason J. Daggett,* for appellees.

MELVIN MAYFIELD, Judge. D. T. Hargraves, Sr., died in June of 1982. He was survived by his wife, Mary Blanche Hargraves, and their two sons, D. T. Hargraves, Jr., and Richard H. Hargraves. He left a will that makes certain specific legacies and devises and then creates two trusts. One trust is given that share of the decedent's residuary estate that will ensure the maximum marital deduction allowed for Federal Estate Tax purposes. His widow is named as the sole beneficiary of this trust with the right to dispose of its assets in her lifetime or by will. The residue of this trust, and the residue of the estate, passes to the second trust. This trust makes income provisions to the widow for her life and, upon her death, the assets go equally to the two sons. D. T. Hargraves, Jr., is nominated as executor of the estate and as trustee of both trusts. If he is not able or willing to serve, the will designates the other son, Richard, to serve as executor and trustee.

On June 18, 1982, the will was admitted to probate and D. T. Hargraves, Jr., was appointed executor. Subsequently Richard Hargraves filed a petition in the probate court seeking to remove his brother as executor. After a hearing, an order was entered on November 12, 1982, granting the petition and appointing Richard as executor in succession. A few days later, Richard and his mother filed a petition in chancery court asking for an order "dismissing and disqualifying" D. T. Hargraves, Jr., as trustee of the two trusts and asking that Richard be named trustee in

succession. After a hearing on this petition, D. T., Jr., was enjoined and removed from serving as trustee and Richard was appointed trustee in succession. This is an appeal from that order. There is no appeal from the order of the probate court removing D. T., Jr., as executor and appointing Richard executor in succession.

The first point raised on appeal is that the chancery court erred in admitting the transcript of the proceedings in probate court into evidence in the chancery court hearing. The appellees point out that the only objection to the introduction of this transcript was to its relevancy. They say that the issue in probate was the misconduct of the executor, D. T. Hargraves, Jr., in the handling of the assets of the estate and that this is relevant in the chancery court hearing on the question of whether the same person should be trustee of the same assets. Appellees cite II Scott, *The Law of Trusts,* § 107 at 841 (3d ed. 1967), which states:

> Where a person is both executor and trustee, and he is guilty of such misconduct as executor as to cause his removal as executor, ordinarily he will be removed also as trustee, even though the two offices are not inseparably connected. . . . Where the same person is executor and trustee, evidence of his misconduct as executor is admissible in a suit to remove him as trustee.

Scott cites *Wylie* v. *Bushnell,* 115 N.E. 618 (Ill. 1917), in support of the last sentence of the above quote. That case held that in a hearing to remove Wylie as trustee, reports that he had filed as executor were admissible to contradict or impeach the reports he filed as trustee. While the statement from Scott seems broader than the case cited for its support, a case directly in point has relied upon the statement for its holding. *See In re Marshall's Will,* 65 N.E.2d 523 (Ohio Ct. App. 1946). At any event, we find no error in the trial court's holding that the evidence of misconduct by D. T. Hargraves, Jr., as executor was *relevant* in the hearing to remove him as trustee.

Appellant's second point is that the chancery court did

not have jurisdiction to enjoin or remove him from acting as trustee since the trusts were not in being at the time of the court's order. We think the answer to that contention is found in appellees' quotation from Bogert, *The Law of Trusts and Trustees* § 526 (rev. 2d ed. 1978) as follows:

> In some cases the question has arisen as to when removal proceedings may be brought, for example, when it is sought to remove a trustee for unfitness before he has taken any action in the affairs of the trust. The criterion in such a case seems to be that the trust must be in existence *as an established legal relationship,* but whether acceptance has been signified or performance of duties begun is immaterial. (Emphasis added.)

The appellant's contention is founded on a statement in the concluding paragraph of the opinion in *Alexander* v. *First National Bank of Ft. Smith,* 278 Ark. 406, 411, 646 S.W.2d 684 (1983), where the court says, "Here, the residuary trust does not come into existence until the estate is closed. Until then no trust is created and jurisdiction remains in probate." The appellees explain this statement by pointing out that the issue to which it was directed was the validity of the order of the probate court awarding attorney's fees. Appellees are arguing, as we understand it, that the court in *Alexander* was answering the objection that only chancery court had jurisdiction to allow fees for services relating to the residuary trust by saying that the fee involved was allowed for services performed for the bank as executor; that there was money paid to the bank as a result of those services; and that the fee was allowed by the probate court for services to the estate, not to the residuary trust which would receive no funds until the death of the widow.

Appellees' suggestion as to the meaning of the statement from *Alexander* is reasonable and does not conflict with the above statement from Bogert that a trustee may be removed if the trust is in existence *as an established legal relationship.* Scott indicates agreement with Bogert as to the existence of a trust by stating:

> A trust can be created although the parties do not know precisely what the subject of the trust is, if it can be ascertained from circumstances existing at the time of the creation of the trust. Thus a trust created by will of the residue of the testator's estate is of course valid although the amount of the residue cannot be ascertained until the amount of his assets and of his liabilities has been determined.

I Scott, *The Law of Trusts* § 76 at 685 (3d ed. 1967). We think the chancery court had jurisdiction to make the order enjoining or removing appellant as trustee.

Appellant's third point is that, if the court had jurisdiction, it erred in appointing his brother, Richard, as trustee in succession, but should have exercised its discretion to appoint an independent trustee. The chancellor's letter opinion, which enjoined and removed appellant from serving as trustee, contains the following findings:

> It would serve no useful purpose to review the evidence. It simply is not in the best interest of the beneficiaries for the trustee to continue. Clearly, there is longstanding ill-will and hostility between the brothers. The trustee's relationship with his mother is lamentable. Considering all these matters together (conflict of interest, reluctance to include assets of the decedent in the Inventory, malfeasance in office), the Court determines that the trustee must be removed.

The appellees contend that Richard should be allowed to serve as trustee because the will nominated him to serve in the event D. T., Jr., is "not able or willing" to serve. However, their brief in arguing that appellant should be removed as trustee, speaks convincingly to the effect that neither brother should serve as trustee.

> The trial court removed the trustee partly on the basis of the hostility and animosity which the trustee held for his mother, the principal beneficiary under the trust. The decision was soundly bottomed in fact and law. D. T. Hargraves, Jr., albeit reluctantly, finally admit-

ted that he had gone to his mother's home, following his removal as executor, and in anger had stripped from her wall her only picture of him, announcing to her, in essence, that he did not want to continue a mother-son relationship with her and admitted that he had neither spoken to her, been in her home, nor addressed any communication of any sort whatsoever to her since that incident (Tr. 96-97). He confessed intense animosity toward his co-beneficiary in the other trust, his brother (Tr. 91-92). . . .

. . . .

Here, Mary Blanche Hargraves, as the sole beneficiary of one of the trusts, is one of the petitioners seeking the removal of D. T. Hargraves, Jr. as trustee. The terms of the trust require the trustee to have frequent contact with the cestui que trustents (see Item VIII of the Will, Tr. 21). Paragraph (b) provides: "The Trustee, *in his sole discretion*," shall distribute to the cestui que trustent.

Richard Hargraves testified that at one time he was in an insurance agency with his father and the appellant, but that he left the partnership in 1977; that there had been bitterness between him and his brother for twenty-two years; that their father knew they did not get along, but that he probably did not know the full extent of the hostility between them.

We have to add to the above circumstances the provisions of the will that allows the trustee, when the first trust is exhausted, to distribute to Mary Blanche Hargraves during her lifetime *so much or all of the income and corpus* of the second trust as in the sole discretion of the trustee shall be necessary or advisable for her support, health and general welfare, and that upon her death the property left in the trust goes to each son equally.

Given the circumstances above and the possibility that Richard could distribute all the income and corpus of the estate to his mother and leave nothing for D. T., Jr.; that a

portion of the assets of the estate is the deceased father's interest in the insurance agency that the father and D. T., Jr., operated and the probability of conflict between the brothers in that regard; that, *in the trustee's discretion,* each son's share of the trust may be distributed to him, or to his descendants, for support, medical care, education or general welfare, and that the will allows the trustee to serve without bond and without accounting or supervision by any court, we think the court should have appointed an independent trustee instead of either brother.

In *Blumenstiel* v. *Morris, Executor,* 207 Ark. 244, 250, 180 S.W.2d 107 (1944), the court quoted from a work that recognized that personal hostility between trustee and beneficiary is not *per se* a ground for removal of the trustee, but said:

> [S]uch personal hostility is a factor to be taken into consideration, and will justify removal of the trustee where it appears that the personal hostility of the parties combines with other circumstances to render removal of the trustee essential to the interests of the beneficiary and the due execution of the trust. . . .

Although the appellate court affirmed the trial court's refusal to remove the trustee in *Blumenstiel,* the evidence of hostility and surrounding circumstances were far short of those here. Also, we note in *Festinger v. Kantor,* 272 Ark. 411, 616 S.W.2d 455 (1981), the court did not reverse the failure to remove trustees but suggested on its own motion, as the case was remanded anyway, that the hostility between the parties should be reviewed "in the light of the present situation which may well warrant a neutral trustee." *Id.* at 429.

We affirm the trial court's decision to enjoin and remove the appellant from serving as trustee but reverse the appointment of Richard Hargraves as trustee in succession, and remand for the court to appoint a neutral, independent trustee.

CRACRAFT, C.J., not participating.

GLAZE, J., dissents.

TOM GLAZE, Judge, dissenting. I respectfully disagree with the majority on each of the three points addressed, and I discuss the points in the order they are presented in the majority opinion.

First, the majority rejects appellant's contentions that admission of the transcript of the October 26, 1982, probate proceedings was improper and constitutes reversible error. While I do agree with the court's ultimate decision on this point, I do so for another reason. Appellant contends the only applicable rules on admissibility of the transcript are Rule 80 of the Rules of Civil Procedure and Rule 804 of the Uniform Rules of Evidence. Rule 80 provides for introduction of a transcript of a former trial between the same parties "when [that transcript is] admissible." Rule 804 provides an exception to the hearsay rule when a witness is unavailable. Appellant asserts that here, there was no claim that the witnesses at the former hearing were unavailable or were even called to testify in the chancery court hearing on appellant's removal as trustee. The short answer to appellant's contentions is that his objection on appeal has an entirely different basis than his objection below, when he objected to introduction of the transcript because it was irrelevant. The trial court found it relevant and admitted it on that basis. No error occurred in the judge's admission based upon relevancy, and our court cannot consider appellant's arguments based upon Rules 80 and 804 because they were not raised below. *Missouri State Life Insurance Co.* v. *Fodrea,* 185 Ark. 155, 46 S.W.2d 638 (1932).

The majority also rejected appellant's second argument that the chancery court did not have jurisdiction to remove him as trustee or to enjoin him from acting as trustee because the estate was still in probate so that the testamentary trusts were not yet in being. Here, the majority simply fails to understand or address appellant's argument, and as a consequence, rests its decision on citations of authority which are inapplicable. Appellant cites *Alexander* v. *First National Bank of Fort Smith,* 278 Ark. 406, 646 S.W.2d 684 (1983), for the proposition that the trusts created by a testator's will cannot take effect until after the estate has been

probated.[1] While appellant phrases his issue in terms of when the trust commences, the majority discusses the validity of a trust when the corpus cannot be ascertained.

The *Alexander* case can be distinguished from the instant case because the issue there concerned when the *administration* of a residuary trust *began, not* when the *trust* itself was *created*. By definition, a testamentary trust is "one created by the terms of a will . . . [to] take effect . . . [at] the testator's death." G. Bogert, *The Law of Trusts and Trustees* § 1031 (2d ed. 1969). Because the testator's estate must be administered first, the trust may not be fully funded until completion of the probate administration several years after the testator's death. *Id. See* 1 A. Scott, *The Law of Trusts* § 53 (3d ed. 1967); *see also* G. Bogert, *Handbook of the Law of Trusts* § 10 (5th ed. 1973). The issue in *Alexander* concerned an award of attorney's fees and whether the probate court or the chancery court had jurisdiction to make the award. The Supreme Court said that the award of fees was properly made by the probate court because the estate was not yet closed and the residuary trust had not yet come into existence. In other words, the fees obviously were awarded for legal work done in connection with the administration of the estate, not the trust, and therefore that award was properly made by the probate court. The question was not whether the trust had been created — which it had been by the terms of the testator's will. In the instant case, the question is simply when the trust itself was created; it was created at the testator's death.

Appellant's last point for reversal is that the court erred in appointing Richard H. Hargraves successor trustee because of hostility existing between him and his brother, the appellant. Neither appellant nor the majority cite any legal authority for the proposition that the trial court should appoint an independent trustee in appellee's stead. By his will, the testator named appellee Richard H. Hargraves as successor trustee in the event that D. T. Hargraves, Jr., became unable to serve. Under the circumstances, the judge

---

[1]This specific statement is not consistent with my understanding of trust law, but the statement was not really necessary in deciding any issue in *Alexander.*

was not clearly erroneous in appointing appellee successor trustee.

Although personal hostility between the trustee and the beneficiaries is a factor for the judge to consider, it is not *per se* a ground to remove a trustee. *Blumenstiel* v. *Morris,* 207 Ark. 244, 180 S.W.2d 107 (1944). In the instant case, the testator was aware of the hostility between his sons at the time he named them trustee and successor trustee in his will. It will be no more difficult for Richard Hargraves to serve as trustee in view of the hostility between him and his brother than it would have been for D. T. Hargraves, Jr., to serve. D. T.'s removal was based upon his misconduct, not upon hostility. The majority conjectures, having no evidence of misconduct on either appellee's or the mother's part, that appellee might distribute to the son's mother all the income and corpus in the trust. As discussed already, the judge removed the appellant as executor for misconduct, and he has the power to remove appellee as trustee if the facts so warrant. However, on the facts as they stand now, I fail to see any abuse of discretion in the chancellor's effectuating the wishes of the testator in naming Richard Hargraves successor trustee.

I would affirm.