531 So.2d 801 (1988)
G.M. "Binx" WALKER
v.
Alma V. COX et al.
No. 57984.
Supreme Court of Mississippi.
September 28, 1988.
*802 Guy M. Walker, Laurel, for appellant.
Thomas W. Corckett, Watkins, Ludlam & Stennis, Jackson, for appellees.
Before DAN M. LEE, P.J., and ROBERTSON and GRIFFIN, JJ.
DAN M. LEE, Presiding Justice, for the Court:
Alma V. Cox, the successor income beneficiary, joined by Mary A. Cox, the settlor, of the "Frederick G. Cox, Jr. Children's Trust," filed in the Chancery Court of Hinds County, Mississippi a complaint for an accounting and removal of G.M. "Binx" Walker as trustee. This complaint was filed on three grounds: the trustee's absence from the jurisdiction, the trustee's failure to give an accounting, and the hostility of the trustee toward the successor income beneficiary. The holders of the residuary interest, John J. Connors III and Janet M. Connors, Alma's children by a previous marriage, joined as plaintiffs. Charles A. Cox, Frederick's son by a previous marriage, joined the defendant.
The lower court found that Mr. Walker had relocated to another jurisdiction, failed to give the successor beneficiary an accounting, and showed signs of hostility towards the successor beneficiary. The chancellor ruled that the preceding actions interfered with the performance of the trust, and ordered the trustee's removal. From this holding, G.M. "Binx" Walker appeals and assigns one error. Ultimately finding no error, we affirm.

STATEMENT OF THE FACTS
On October 1, 1966, Mary Anderson Cox (hereinafter "Mary"), the settlor (one of the appellees') established a trust with the appellant, G.M. "Binx" Walker (hereinafter "Binx"), as the trustee. Binx was a C.P.A. and an attorney. Under the terms of the trust, the principal beneficiaries were the settlor's son, Frederick Gardiner Cox, Jr., and said son's wife, Alma V. Cox (hereinafter "Alma"). The principle purpose of the trust was to provide income to "keep up the usual standards of support, education, medical care, welfare and social position which my son maintain's for himself, his wife and family ...," and when he died, for his surviving wife's life. Frederick Gardiner Cox, Jr., the son, died in 1978 and for the past several years the sole income beneficiary of the trust has been his surviving wife, Alma.
Under Binx's management, the equity in the trust increased from $36,788.09 in 1978, the year of Frederick's death, to $157,087.40 in 1985. According to the record, Mrs. Cox received distribution from the F.G. Cox Trust as follows:

 INCOME DRAWN %AGE OF
YEAR BY ALMA COX CORPUS CORPUS
 1978 $ 2,500.00 0.057% $ 43,727.00
 1979 $ 2,000.00 0.054% $ 36,788.00
 1980 $ 3,400.00 0.063% $ 54,245.00
 1981 $ 3,800.00 0.052% $ 72,442.00
 1982 $ 4,200.00 0.055% $ 76,273.00
 1983 $ 7,250.00 0.082% $ 87,922.00
 1984 $ 7,500.00 0.054% $137,945.00
 1985 $10,000.00 0.071% $140,466.00

The amounts shown above supplemented Alma's gross income of approximately $60,000 per year ($30,000 for her work with the State Department of Public Welfare and oil income of $2200-$3000 per month.)
Despite Alma's $60,000 per year income, she insisted that Binx invade the corpus of the trust for additional money to take care of certain expenses. Alma pointed to expenses of maintaining a large home: reroofing, placing siding on the house, repairing the sprinkler system and carport.
Although the expenses cited by Alma seem legitimate, Binx refused to invade the corpus of the trust. Using his discretionary powers as set out by the trust, Binx told Alma that she could not invade the trust by demand. More specifically, Binx informed Alma that Frederick G. Cox, Jr., Alma's husband, had the prerogative to invade the trust up to $5,000 a year. This *803 prerogative pertained solely to the primary income beneficiary, Frederick G. Cox, Jr., and not to any other successive income beneficiary. Alma interpreted Binx's response to mean that the power to invade the corpus of the trust was limited to the primary beneficiary.
In addition to the request to invade the corpus of the trust, Alma asked Binx to give her an accounting of the net assets of the trust. Binx, refusing to give her an accounting, stated that "[he was] under the belief that the residuary trustees were the ones entitled to an accounting." Having been refused the additional money and an accounting, Alma stated that a deep, mutual hostility developed between Binx and herself.
In an effort to resolve the problem, Alma contacted the settlor of the trust, Mary Cox, her mother-in-law. Mary advised Alma to take the matter to court, saying, "she said, I thought you should go to court a long time before now."
Pursuant to this discussion, Alma Cox, the sole income beneficiary, Mary Cox, the settlor, John Joseph Connors III, and Janet Merrill Connors, holders of one-fourth remainder interest, filed a complaint for an accounting and removal of G.M. "Binx" Walker as trustee. The appellants cited as reasoning that Binx had wilfully, arrogantly, and with open hostility to Alma Cox failed to carry out the express terms of the trust and his implied duties as trustee.
Based on this charge, the Chancery Court of Hinds County held a hearing concerning the removal of the trustee. The only evidence presented before the lower court was the testimony of the appellee, Alma Cox, by deposition and the appellee's witnesses, two certified public accountants. Appellant/trustee did not appear at the hearing and offered no evidence. After the hearing, the chancery judge found that the evidence in the case established that there was hostility on the part of the trustee toward the defendant, Alma Cox. Additionally, the chancellor found that Binx did not fairly administer the trust according to its terms. Based on these facts, the court ordered Binx removed as trustee.

DISCUSSION

I. The Opinion of the Chancellor is Contrary to the Evidence and the Law.
Binx argues that he had not violated the trust in any way. To strengthen this position, Binx asserts that each year he paid all of the income from the trust to Alma V. Cox. Additionally, he claims to have operated the trust with a nominal charge for his acts.
Binx also argues that there is no evidence before this Court of hostility other than the anxiety of the beneficiary. More specifically, Binx believes that Alma Cox's charges stem from his failure to place her judgment over the discretionary power granted to the trustee by the trust agreement.
Considering Binx's argument, this Court turns to the reasoning in Yeates v. Box, 198 Miss. 602, 612, 22 So.2d 411, 415 (1945), where this Court states:
A court of chancery or its equivalent has inherent power to remove the trustee for good cause, such power being incidental to the court's paramount duty to see that trusts are properly executed, and the trust estate preserved, and as broad and comprehensive as the exigencies of the case may require.
In view of Yeates, this Court must decide whether the chancellor abused his discretion in removing the trustee. The first two grounds, absence from the jurisdiction and failure to give an accounting, certainly cast shadows as to the ability of the trustee to perform his duties. More significantly, the hostility of the trustee toward a beneficiary could affect the trustee's judgment in carrying out the terms of the trust.
Thus, the only close question before this Court is whether or not the evidence supported the finding by the chancellor that there was hostility on the part of the trustee toward successor income beneficiary, Alma Cox. In resolving this issue, this Court thoroughly reviewed prior authority in connection with the removal of trustees. To this date, this Court has not *804 addressed the issue of removal of a trustee due to hostility.
A leading treatise on the subject, Bogart, Law of Trust (5th Ed. 1973) § 160, states:
Disagreement and unpleasant personal relationships between the trustee and the beneficiaries are not usually enough to warrant removal. The beneficiary often conceives that he could manage the trust better than the trustee, resents failure to follow his advice, is dissatisfied with returns, thinks that the trustee is too conservative in his investment policies, and otherwise finds fault with the trustee. Thus, friction develops. But the settlor has entrusted the management to the trustee and not to the beneficiaries. The very fact that he created a trust showed that he did not want the beneficiaries to be the controlling factor in the management of the property. However, in some instances the hostile relationship between the trustee and the beneficiary have gone so far that the court feels a new trustee should be appointed.

In addition to the reasoning in Bogart, this Court reviewed the analysis in Ashman v. Pickens, 12 Ark. App. 233, 674 S.W.2d 4 (1984). In Ashman the Court of Appeals in Arkansas, citing Blumenstiel v. Morris, 207 Ark. 244, 180 S.W.2d 107 (1944), sets out two rules concerning the removal of a trustee due to the mutual hostility between the beneficiaries and the trustee. The Court in Ashman explains:
Also in Blumenstiel, supra, the Court adopted the rule that mutual hostility between the beneficiaries and the trustee is a sufficient ground for the court to remove the trustee if 1) the provisions of the instrument creating the trust require mutual interchange of ideas, and 2) if the hostility tends to defeat the purpose of the trust.
Finding the reasoning of Ashman persuasive, we believe the better rule to be that hostility of the trustee toward the successor income beneficiary could defeat the purpose of the trust.
In the case at hand, the chancellor found hostility as one of the grounds for removal of Binx Walker as trustee. We find that there was sufficient evidence in the record to support the finding of hostility.
A review of the record reveals this special provision of the trust:
It is not my intention that the trust estate and income therefrom be conserved for the benefit of the ultimate remaindermen.
The chancellor found that Binx, acting contrary to this provision, did not fairly administer the trust according to its terms.
In support of that finding, the lower court pointed out that Binx failed to meet Alma Cox's needs for extra money. His failure to meet her needs to the extent possible resulted in the trust growing from $36,788.09 to $157,078.40 over the trust's lifetime. The growth of the trust in itself is a highly commendable result and accomplishment, particularly while the trustee's compensation amounted to only $300 to $500 per year for this excellent performance. However, the trust seems to provide for expending the funds, rather than increasing its assets for future distribution.
In addition to failing to provide further support for Mrs. Alma Cox, Mr. Walker also refused to provide an accounting of his actions. This Court finds little merit in Mr. Walker's argument "that the residuary trustees were the ones entitled to an accounting." Consequently, this Court, as did the chancellor, finds that Mr. Walker's actions combined to support Alma Cox's allegation that there was hostility on the part of the trustee toward Mrs. Cox.
Considering all the evidence presented, this Court has no alternative under our familiar Rule[1] except to uphold the chancellor's finding. We are aware that Alma Cox may bring great pressure upon the new trustee; however, the new trustee will, no doubt, carry out all of the purposes of the trust as required by law.

*805 CONCLUSION
The relationship between the trustee, G.M. "Binx" Walker, and Alma V. Cox has shown obvious signs of deterioration. Based on the inability of the two parties to work together, the chancellor found that "there was hostility on the part of the trustee toward defendant Alma Cox and that he did not fairly administer the trust according to its terms." Finding that the chancellor "has inherent power to remove the trustee for good cause" and that he did not abuse this power and discretion, we affirm the findings of the lower court. Considering the fact that this appeal is without supersedeas, it is safe to assume that Trustmark is now acting as trustee. Accordingly, the decree of the Chancery Court of the First Judicial District of Hinds County, Mississippi, dated the 8th day of December, 1986, be and the same is hereby affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
NOTES
[1] "This Court's articulated scope of review of a chancellor's finding is that of substantial evidence/manifest error." See Pieper v. Pontiff, 513 So.2d 591 (Miss. 1987).